[No. 19880. *En Banc.* January 4, 1927.]

R. H. FRY *et al., Appellants, v.* Jos. P. O'LEARY *et al.,* *Respondents.*[1]

[1] HUSBAND AND WIFE (51)—COMMUNITY PROPERTY—RIGHTS OF HUSBAND—MANAGEMENT. It is not necessary for a wife to join a husband in his petition, as manager of the community property, for the vacation of a portion of an alley abutting upon the community real property.

[2] MUNICIPAL CORPORATIONS (349)—STREETS AND OTHER PUBLIC WAYS—VACATION. Fraud is not shown in procuring a vacation of part of an unused alley by the fact that the petitioner agreed to reconvey the same to the city whenever needed, and to defend any action or suit in the matter, free of cost to the city.

[3] SAME (349)—STREETS—VACATION—POWERS OF CITY. The right to vacate a street is a political function which, in the absence of fraud, collusion or interference with a vested right, the courts will not review and for which damages cannot be recovered.

[1] Reported in 252 Pac. 111.

[4] SAME (349). An abutting property owner upon a street or alley has a vested interest in the right to use the whole of the street for ingress, egress, light and air, and the right to compensation for his damage by a vacation of a portion of the same, regardless of which side of the street is vacated.

[5] SAME (358) — STREETS — OBSTRUCTION — RIGHTS OF ABUTTING OWNER. A city council can, by ordinance, vacate a portion of the street in which property owners have a vested right only for a public use, and then only upon payment of damages sustained, as required by Const. Art. 1, § 16.

[6] ACTION (23) — JOINDER — CLAIMS ARISING OUT OF SAME TRANSACTION. It is not an improper joinder of causes of action to sue a city to set aside the vacation of a street, and to join the owner of abutting property and ask for the removal of his garage, situated on the vacated portion of the street.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered March 3, 1925, dismissing an action to set aside an ordinance vacating a portion of a street, upon sustaining a demurrer to the complaint. Reversed.

*Robert Hope Fry,* for appellants.

*John S. Lynch,* and *Thos. L. O'Leary,* for respondents.

ASKREN, J.—This is an action to set aside an ordinance vacating a portion of a street in Olympia, and to require the removal of a building placed thereon. From an order sustaining a demurrer and dismissing the action, plaintiffs appeal.

In August, 1922, respondents O'Leary, after receiving permission from the city of Olympia, erected a garage and fence within the limits of Garfield avenue in Olympia.

In December, 1925, respondents O'Leary, together with P. M. Troy and James E. Clark, petitioned the city council to vacate thirteen feet off the south side of Garfield avenue between Sherman avenue and West

Bay drive in the city of Olympia, this amount being sufficient to embrace the garage referred to. These three petitioners were the owners of three of the four lots whose sides abut on Garfield avenue, O'Learys' and Clark's properties being on the south side of the street where the strip was sought to be vacated, and Troy's property being on the north side. Appellants Fry were the owners of the fourth lot, it being on the north side, and across the street from the part sought to be vacated. Proper proceedings were thereafter had by the city council, resulting in the passage of an ordinance vacating thirteen feet off the south side of Garfield avenue for the block in distance from Sherman avenue to West Bay Drive.

Remonstrance was filed by the appellants here, but it was not sustained by the council. This proceeding was then begun to declare the ordinance invalid, upon the ground that the petition was not signed by two-thirds of the property owners abutting on the street, as required by law, and that the ordinance, if put into effect, would result in taking away appellants' vested rights of ingress and egress on the full width of the avenue, and that a garage building placed on the vacated portion by the O'Learys had deprived the Fry property of a portion of its view, light, air, access, etc. Fraud was also alleged, it being claimed that, at the time the ordinance was passed, the attorney for respondents O'Leary, agreed that, if litigation ensued over the granting of the petition, he would defend the same without cost, and that, in the event the city ever desired the use of the vacated strip, an easement or quit claim would be given to the city without charge therefor.

The trial court sustained the demurrers filed by respondents O'Leary and the city of Olympia, and in its

memorandum opinion placed the ruling upon the ground that the complaint did not state facts sufficient to constitute a cause of action, for two reasons: (1) that there was an absence of allegation or showing in the complaint that the proceedings of the counsel were irregular; and (2), that the appellants could not maintain an action because they were not abutting property owners upon the portion of the street vacated.

[1] Appellants urge that the complaint stated a cause of action, because it alleged that the petition for vacation was not signed by two-thirds of the abutting property owners. This finds its basis in the contention that the wives of the three petitioners should have signed the petition. No authority is cited to sustain this proposition. The argument is that, since the property of the signers is community property that cannot be sold or incumbered without the signature of the wife, no action can be taken by the manager of the community which adds to the rights and benefits of the community without it is coupled with the signature of the wife. But this contention does not seem sound. This is not a case where the title to real property is affected, or where the protection which the statute seeks to give a married woman by preventing a sale by her husband against her wishes is set aside, but is more nearly of the character of those cases where improvements of streets—paving, sidewalks, sewers and gutters—are desired. It has always been the uniform practice to have petitions of that character signed by the manager of the community, and to hold otherwise is to add to the burdens of preparing and securing petitions for public improvements without any substantial benefit therefrom.

[2] The allegation of fraud is not sufficient as a valid reason for setting aside the ordinance in question. We find no reasonable ground for complaint that re-

spondents' attorney agreed that his clients would reconvey the vacated portion of the street, if the city should at any time require it. It appears that about one-fourth of the distance of Garfield avenue between the two streets referred to is on a grade of 4.7 per cent, and that it then shears abruptly to a grade of twenty-five per cent for the rest of the block, making a street that is almost impossible of improvement. While dedicated for some thirty-six years as a public street, it has never been improved, and perhaps never will be. Nor does the fact that counsel offered his services to the city free in case of litigation over the passage of the ordinance, in any wise indicate fraud. Quite the contrary. We think our ruling on this point requires no argument in its behalf, and to state the issue is to argue it.

[3] The really important question in this case revolves about the determination of whether a city council has the power under the statute to vacate a strip of land thirteen feet wide over the protest of appellants, and whether the damages, if any, to their property are such as to interfere with a vested right.

There can be no question but what, under our decisions, the power of vacation of streets and alleys or portions thereof belongs to the municipal authorities, and the exercise of that power is a political function which, in the absence of collusion, fraud, or the interference with a vested right, will not be reviewed by the court; and that one who suffers damages similar to those sustained by the public generally will not be heard to complain. *Ponischil v. Hoquiam Sash etc. Co.*, 41 Wash. 303, 83 Pac. 316; *Freeman v. Centralia*, 67 Wash. 142, 120 Pac. 886; *Taft v. Washington Mutual Savings Bank*, 127 Wash. 503, 221 Pac. 604.

[4] We think it also clear, under the uniform weight of authority, that one who is an abutting prop-

erty owner upon a street or alley; any portion or the whole of which is sought to be vacated, has a special right and a vested interest in the right to use the whole of the street for ingress and egress, light, view and air, and, if any damages are suffered by such an owner, compensation is recoverable therefor. It follows, therefore, that if appellants' light, air, view, or access is materially diminished, as alleged in the complaint, they are entitled to have the same passed upon by a jury regularly impaneled to determine the amount thereof. *Ridgeway v. City of Osceola,* 139 Iowa 590, 117 N. W. 974.

Respondents contend that the vested interest of an abutting property owner in a street extends only to the middle of the street, and that therefore appellants are not abutting property owners as to the thirteen feet vacated, which is across the street. But this position is untenable. Carried to its logical conclusion the council could vacate all the street opposite appellants' property, leaving but a thirty-foot street, and still appellants have no cause for complaint because not abutting owners. Yet there can be no doubt that, under most circumstances, property on a street only thirty feet in width would not be as valuable as on one twice as wide, for there would be only half as much space for light, air, view and means of access. An abutting property owner's vested interest is to the full width of the street in front of his land, and he is entitled to use the whole thereof for egress and ingress, light, air and view, and for any substantial or material diminution of any of these rights he is entitled to recover in damages.

In *Smith v. Centralia,* 55 Wash. 573, 104 Pac.797, the rights of an abutting property owner to the full width of the street was referred to in the following language:

"The rights which an owner of abutting property possesses in a street are different in kind from that possessed by one whose interest is only that of a right of way along a street. To close or partially close a street affects the right of ingress and egress to and from the property of an abutting owner, makes it possible to curtail his supply of light and air, and otherwise affects the value of his property; while a property owner whose right in the street is a mere right of way over it as one of the public does not suffer these particular injuries to his property."

See also: *Brazell v. Seattle,* 55 Wash. 180, 104 Pac. 155; *Reed v. Seattle,* 124 Wash. 185, 213 Pac. 923, 29 A. L. R. 446.

The ruling of the Minnesota supreme court in *Adams v. Chicago, B. & N. R. Co.,* 39 Minn. 286, 39 N. W. 629, 12 Am. St. 644, 1 L. R. A. 493, is particularly enlightening on this question:

"It is, however, hardly necessary to inquire how the lot owner gets his private right in the street; for it is established law that he has a private right, which, as we have stated, all the cases concede extends to the necessity of access. Access to the lot is only one of the direct advantages which the street affords to it. In a city densely peopled and built up, the admission of light and air into buildings is about as important to their proper use and enjoyment as access to them. Light and air are largely got from the open space which the streets afford.

"What reason can be given for excluding a right to the street for admitting light and air, when the right to it for access is conceded? For mere purposes of access to the lots, a strip ten or fifteen feet wide might be sufficient. Yet everybody knows that a lot fronting on a street sixty or seventy feet wide is more valuable, because of the uses that can be made of it, than though it front on such a narrow strip. Take a case in one of the states where the fee of the streets is in the state or municipality. and of a street sixty feet wide. The abutting lot owners have paid for the advantage of the

street on the basis of that width, either in the enhanced price paid for their lots, or, if the street was established by condemnation, in the taxes they have paid for the land taken. In such a case, if the state or municipality should attempt to cut the street down to a width of ten or fifteen feet, would it be an answer to objections by lot owners that the diminished width would be sufficient for mere purposes of access to their lots? It would seem as though the question suggests the answer."

It is urged by respondents that our decision in *Taft v. Washington Mutual Savings Bank,* 127 Wash. 503, 221 Pac. 604, is controlling here. In that opinion, it was said that

" . . . the owner of a neighboring lot, not immediately abutting or touching the space vacated, whose egress is not destroyed or substantially affected, and no special circumstances affecting him are shown, as distinguished from the general public, has no right to enjoin the city from putting the vacating ordinance into operation, or the abutting owner from building across the vacated portion of the alley, upon the mere right to light and air unobstructed by the vacated portion."

But these words need be read in the light of the facts, which showed that the ordinance attempted to vacate a portion of the alley in altitude and did not attempt to vacate any portion of the surface of the alley, and that the property of the protestant did not abut upon the space vacated at any point.

[5] However, the complaint in this case alleges that the city council vacated a portion of the street without the same being done for a public use, but that it was vacated for a private use. The council may not vacate a portion of a street in which an abutting property owner has a vested right without the vacation is for the public use, and then only upon the payment of the damages sustained. We have heretofore adverted

to the fact that this street, although dedicated many years ago, is unimproved and a great portion of it is perhaps incapable of improvement and use. But there is no showing in the record to indicate that the vacation of a portion of the street was made because of inability to improve the street, nor is there any showing that the width of the street is lessened because the council determined as a fact that the needs of the public would be better served by a narrower street. It is only by indulging in the presumption that the council has decided that the public needs require that the street should be narrower, and that the topography of the ground was such that the thirteen feet actually vacated was the least desirable for the use of the street, that we can say the council's action was for the public use. But we cannot indulge in this presumption in view of the allegations of the complaint and the record made thus far.

Nor can the city, by the passage of an ordinance of vacation, damage the property of an abutting owner without first having ascertained and paid the amount of the damage. Section 16, article I of the constitution, as often construed by us, requires this to be done. To permit the passage of such an ordinance without first ascertaining the damage and paying therefor, is to compel the property owner to bring an action to recover his damages. The burden may not be so placed. *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385. A vacation ordinance stands on a different footing, as far as a property owner is concerned, than those ordinances which provide that some action shall be taken thereafter which damages one's property. The vacation ordinance carries its own execution. When the ordinance becomes effective by the lapse of time provided by law, the property abutting

the portion vacated has been damaged. Nothing remains to be done.

[6] It is contended by respondents that two causes of action are improperly joined, because relief is sought to have the ordinance declared invalid, and there is also a prayer to have the garage and fence removed. According to the complaint, the garage was placed in the street by respondents O'Leary with the consent of the city, and any action to have the garage removed could well name both as defendants. Thereafter the ordinance was passed which attempted to vacate thirteen feet of the street, and which, in the theory of respondents, gave them authority to maintain the garage in its present position. Upon this question both of the respondents are proper parties.

We think the series of acts which gave rise to the claim of respondents on one side and appellants on the other are such that the respective rights cannot be determined excepting in a single proceeding, and that it is proper to so join them.

The judgment will be reversed, with instructions to overrule the demurrers.

All concur.