[No. 16753-4-III.    Division Three.    July 1, 1999.]

UNION ELEVATOR & WAREHOUSE COMPANY, INC., *Appellant*,
v. THE STATE OF WASHINGTON, *Respondent*.

*Robert A. Dunn* of *McCormick, Dunn & Black, P.S.*, for appellant.

*Christine O. Gregoire, Attorney General, Bryce E. Brown, Jr.*, and *Jonathan Craig Thompson, Assistants*, for respondent.

SCHULTHEIS, C.J. — Union Elevator & Warehouse Co., Inc., appeals an order of the Adams County Superior Court, which granted the State of Washington Department of Transportation's cross-motion for summary judgment on the issue of inverse condemnation. Union contends the

trial court erred in granting the summary judgment because material questions of fact exist concerning the unreasonableness and impracticability of the sole remaining means of access to Union's grain elevator. We agree and reverse and remand for trial.

Union is a grain elevator company established in 1908. It is locally owned, primarily by its employees. Union provides grain storage and marketing services for farmers in and around Adams County. Thirteen people are employed year-round by Union, with an additional seasonal crew of eighteen assisting during harvest. The grain storage elevator that is the subject of this appeal is called the East Lind facility. It was built in 1937 and has been continually serving the needs of the local farmers for over 60 years. It had been regularly maintained and was in excellent operating condition. The East Lind elevator had a unique storage system that allowed for the separation of small quantities of grain, either by variety or condition prior to storage and treatment. Unlike larger configuration storage facilities, grain products could be isolated for a reasonable cost. Current building costs make this unique type of storage system very expensive to replace.

A vital aspect of the grain elevator business is its very short harvest season. During the course of a few weeks, Union has to capture the greatest amount of grain possible. During harvest each year, Union competes with other grain elevator operations, grower-owned farm storage and direct shipment of grain to delivery terminals. Union has served its customers and remained competitive in the market because of its distance from the harvesting farms, short driving time, speed of unloading, safety, driver visibility, and ease of access from the main roadway.

In 1991, Congress designated State Route (SR) 395, between Mesa and Ritzville, a high priority corridor on the National Highway System. The Washington State Department of Transportation (WSDOT) undertook a seven-phase plan to upgrade the roadway. This involved changing the

existing alignment of the highway from a two-lane partial access control facility to a four-lane full access control facility with 70 miles per hour signing. The project included six new interchanges, two new overpass structures, new frontage roads, and five field access roads.

During the design phase of the construction work, Union notified the WSDOT that the proposed change to the intersection at SR 395/SR 21 at the Lind-Kahlotus County (L-K) Road would render its East Lind property useless. Nevertheless, as a result of WSDOT's project, the intersection was closed through the construction of a cement barrier and cul-de-sac.

Because of the highway redesign, area farmers complained they were able to access Union's East Lind facility only by driving further north on SR 395 and exiting onto the reconfigured SR 21. They then had to negotiate a steep downhill grade (with their fully loaded grain trucks), slow to a near stop and then negotiate a 90 degree turn to the left onto another county road. The drivers then had to cross two sets of active, mainline Burlington Northern & Santa Fe Railway tracks, make another 90 degree turn to the left, followed by a 90 degree turn to the right. The trucks then had to proceed up a severe slope to the East Lind driveway. The sharp right turn into the East Lind driveway is obscured by a railroad track berm, which creates a blind turn. Additionally, this county road is etched with deep, narrow ditches along the shoulders on both sides. The road is not banked on either side of the corners so trucks are not able to stay in their own lane when making sharp turns.

According to WSDOT project engineer Theodore Trepanier, the cul-de-sac was constructed consistent with the purposes of providing full access control, including reducing traffic accidents, decreasing travel time, and improving public safety. His affidavit indicates that it was physically impracticable to retain the grade intersection now blocked by the cul-de-sac because the addition of new lanes on SR 395 resulted in the northbound side of the highway being

at a higher grade than the southbound side. In Mr. Trepanier's opinion if the L-K Road were allowed to remain open with four lanes of traffic on SR 395, a dangerous safety problem would exist.

On September 17, 1996, Union filed a complaint for damages as a result of inverse condemnation against the State of Washington. Union alleged that the State's construction of the cul-de-sac at this site eliminated the access road used for ingress and egress from the intersection of SR 395/SR 21 onto the L-K Road. Union claims this was performed in such a manner as to completely take and destroy all practical, reasonable, and economically viable use of its East Lind facility. In its answer to Union's complaint, the State admitted it had acquired certain property for construction. As a result, the L-K Road access to SR 395 was eliminated.

Union moved for partial summary judgment on March 31, 1997. The State filed a cross-motion for summary judgment on May 1. The court granted the State's cross-motion. In its oral ruling, the court observed:

> [T]here's no doubt that they [East Lind customers] have access. What we're talking about . . . is . . . a different route. And there's no doubt in my mind that the law says that the security [sic] of travel in that sense, if it's not completely ridiculous, is not a compensatable [sic] situation. . . . This case is not a land lock case.
>
> . . . [E]very time they change a road you're going to have some interference, somehow. And, wherever you put it, if you're going to change it, somebody's going to have some interference. But the question of whether there's substantial impairment, in this particular case, I don't think has been shown as a legal matter, not the way the statute reads. Because, really, we're talking about how much further they have to go. . . .
>
> It's obviously, to customers, it might or might not make a difference. But I've never seen a case where that—as long as there's access, that it's going to be a compensatable [sic] item . . . . It might be an argument to the state legislature, but I don't think for the courts it's an argument.

The court's summary judgment order included the following findings:

> 2.1 There is no genuine issue of material fact that Union Elevator's statutory claim to just compensation is precluded by RCW 47.52.041.

> 2.2 There is no genuine issue of material fact that Union Elevator's constitutional claim to just compensation is without merit because there is no physical impairment of its access different in kind from that of the general public.

Union appealed the summary judgment dismissal. The State made a motion on the merits to affirm the summary judgment dismissal. The motion was denied and the case was set before the appellate court for review.

Union contends the trial court erred when it granted the State's summary judgment dismissal because there were disputed material facts at issue regarding Union's customers' access to the grain elevator at the East Lind facility after the highway reconstruction. We agree.

■■ A summary judgment dismissal is reviewed de novo. All facts are reviewed in the light most favorable to the nonmoving party, in this case, Union. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 897, 874 P.2d 142 (1994). A material fact is one on which the result of litigation depends. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

The State takes a literal stance and contends that "access," as used in the statute, means that if *any* alternate route to or from an affected property exists, then RCW 47.52.041, as a matter of law, forecloses any and all claims for damages caused by loss of access. Union, on the other hand, argues that loss of access should be determined on a case-by-case basis. It argues the trier of fact should determine whether adequate access to a particular prop-

erty exists only after taking into consideration other factors such as safety, reasonableness, and commercial practicalities.

Union contends the use of the phrase "adequate ingress to or egress from such property" as used in RCW 47.52.080 indicates a legislative intent to apply reasonable or adequate access property rights to nonabutting properties as well as abutting property owners. RCW 47.52.080 provides:

> No existing public highway, road, or street shall be constructed as a limited access facility except upon the waiver, purchase, or condemnation of the *abutting owner's right of access* thereto as herein provided. In cases involving existing highways, if the abutting property is used for business at the time the notice is given as provided in RCW 47.52.133, *the owner of such property shall be entitled to compensation for the loss of <u>adequate</u> ingress to or egress from such property* as business property in its existing condition at the time of the notice provided in RCW 47.52.133 as for the taking or damaging of property for public use.

(Emphasis added.)

■ Statutes must be read in their entirety and not in a piecemeal fashion. *Donovick v. Seattle-First Nat'l Bank*, 111 Wn.2d 413, 415, 757 P.2d 1378 (1988). "The purpose of statutory construction is to effectuate legislative intent." *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994). Questions of statutory construction are reviewed de novo. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993). A reviewing court, in interpreting a statute, is to give full effect to the intent and purpose of the legislation, as expressed in the act, as a whole. *State v. Malone*, 106 Wn.2d 607, 611, 724 P.2d 364 (1986).

RCW 47.52.080 plainly refers to abutting property owners and the East Lind facility does not directly abut the road closure at the SR 395/L-K Road cul-de-sac. Thus, the statute does not directly apply to the East Lind facility. However, because the East Lind facility abuts the L-K Road only one-half mile from the barrier erected at the cul-de-

sac, Union argues the adequate access argument applies by analogy.

■■ We agree this is a fact-driven case. The East Lind facility is the only business affected by the road closure. Union maintains that as a result of the closure no safe, suitable, sufficient, reasonably fit or economically practicable access to its East Lind facility exists. As such, Union urges this court to construe the term access, as used in RCW 47.52.041,[1] to mean adequate access as used in RCW 47.52.080. If this court does so, Union contends the unrebutted evidence shows there is a question of fact regarding whether the State left adequate access to the East Lind facility.

In reviewing existing case law, compensation for nonabutting property owners, at least as it relates to access issues, is usually denied. Nevertheless, nonabutting property owners do, on occasion, have protected access rights. *State v. Wineberg*, 74 Wn.2d 372, 375-76, 444 P.2d 787 (1968). In *Wineberg*, a nonabutting property owner appealed the trial court's decision that the closure of a city street was a noncompensable item of damage. The court held:

(1) a property owner must abut directly upon the portion of the roadway being vacated in order to be awarded compensable damages *per se*; (2) where the closure and the owner's property are separated by an intersecting street, compensation is *usually* denied; and (3) where the closure occurs within the same block but not directly in front of the property, the owner must show physical impairment of his access different in kind from that of the general public (*i.e.*, if the impairment is merely an added inconvenience that is common to all travelers it cannot form the basis for payment of compensation).

*Id.* at 375 (emphasis added). The *Wineberg* court concluded

[1]RCW 47.52.041 provides:

"No person, firm or corporation, private or municipal, shall have any claim against the state, city or county by reason of the closing of such streets, roads or highways *as long as access still exists* or is provided to such property abutting upon the closed streets, roads or highways. Circuity of travel shall not be a compensable item of damage." (Emphasis added.)

the nonabutting property owner had not shown his reasonable means of access had been obstructed, nor did he make a showing of the requisite special damages "different in kind, and not merely degree, from that sustained by the general public." *Id.* at 376. The *Wineberg* court did not elaborate on what would qualify as special damages.

Currently, there is no dispositive case directly on point in Washington that addresses the loss of access issue as it applies to rural, nonabutting property. Additionally, we find *Wineberg* factually distinguishable from the case at bar. In *Wineberg*, after a city street was closed, the urban property was left with a frontage road adjacent to the subject city block, which the court found constituted adequate access under those circumstances. In comparison, Union claims the closure of the rural L-K Road caused a total loss of safe, reasonable, and adequate access to its East Lind facility for its customers, which caused the complete destruction of its business and real property values. This type of damage is certainly different in kind from that sustained by the general public.

In order to maintain an inverse condemnation action, Union must show more than mere inconvenience at having to travel a further distance to its business facility. It must show its right of access was either eliminated or substantially impaired. *Keiffer v. King County*, 89 Wn.2d 369, 373, 74, 572 P.2d 408 (1977). In other words, its reasonable means of access must be obstructed. *Capitol Hill Methodist Church v. City of Seattle*, 52 Wn.2d 359, 366, 324 P.2d 1113 (1958). This determination is a factual issue for the trier of fact at trial. *Keiffer*, 89 Wn.2d at 374.

In support of its position that it suffered substantial impairment of access different than the general public, Union submitted affidavits that indicated the following:

**Gordon Gering:** Mr. Gering stated his family had been a customer of Union since 1908. The existing access requires truck drivers to negotiate a steep downhill grade, approach a 90 degree turn to the left, cross two sets of railroad tracks, make a 90 degree turn to the left, a 90 degree turn to the

right, and proceed up a severely sloped driveway to reach the East Lind facility. Because of this unreasonable access, they now haul their grain to a Union competitor. They advised Union that they simply could not use the access as it currently exists and will not deliver grain to the facility. The revised "route is essentially like having no access whatsoever."

**Richard Horpedahl:** Mr. Horpedahl stated he has been the Superintendent of Operations at Union for 17 years. Because no access is available from the south or east, he believes Union's business is destroyed because "it is undisputedly clear that no farmer reasonable or otherwise, will utilize such route to deliver grain to the East Lind facility." Only a very insignificant quantity of grain (less than 5,000 bushels) was delivered to East Lind by its customers during the harvests of 1995 and 1996. Long time customers have advised him "there is no circumstance under which they would again haul their harvested crops to [the] facility." This is not only because of the distance, but also because of the dangerous course requiring multiple 90 degree turns.

The record on summary judgment does not indicate the State rebutted Union's description of the current ingress and egress of the East Lind facility but instead argues this is an economic damage case and/or a circuity of travel case, both of which are noncompensable. We disagree with the State's position.

Summary judgment should not be granted when there are disputed facts on which the outcome of litigation depends. CR 56(c); *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 854, 751 P.2d 854 (1988). Here, viewing the facts in the light most favorable to Union, a reasonable person could find that even though access to the East Lind facility remains, that access has been so substantially impaired that Union has suffered damages different from that of the general public and is, therefore, entitled to compensation. Because the record contains disputed issues of material fact, the summary judgment dismissal was inappropriate.

We reverse and remand for trial. Union requested that when determining the issue of damages based on the

amount of impairment of access, an instruction be given to the trier of fact declaring the issue of remaining access is to be determined on the basis of reasonableness, adequacy and commercial practicability. We find that proper.

SWEENEY and BROWN, JJ., concur.

Reconsideration denied July 1, 1999.