[No. 34604-4-II.   Division Two.   September 11, 2007.]

SANDRA M. GALVIS ET AL., *Respondents*, v. THE DEPARTMENT OF TRANSPORTATION, *Appellant*.

694

698

Robert M. McKenna, Attorney General, and Douglas D. Shaftel, Assistant, for appellant.

Robert A. Wright (of Faubion Johnson & Reeder); and Charles J. Sinnitt, for respondents.

¶1 HOUGHTON, C.J. — The State Department of Transportation (DOT) appeals just compensation and attorney fee awards to property owners who have certain access connections to State Route 7 (SR 7). The property owners cross-appeal a trial court decision upholding the constitutionality of the highway access management act (HAMA), chapter 47.50 RCW. We agree with the trial court that the HAMA is constitutional. But because substantial evidence supports the reviewing officer's finding that the property owners will have reasonable access to their properties after implementation of the DOT's safety improvement project, we reverse the superior court's compensation and attorney fee awards.

FACTS

¶2 In 2003, the DOT proposed a safety improvement project along a five-mile segment of SR 7 from 112th Street to 188th Street in Parkland. The project aimed to reduce the number of accidents by constructing sidewalks and

drainage swales, eliminating several access connection points under the HAMA. Sandra Galvis and her son Alexander Moncada (collectively Galvis), James and Virginia Masewicz, and Ash Resources, LLC, own property[1] with access connections to SR 7 that the DOT intends to modify as part of the project.

¶3 Galvis owns and operates a retail grocery store, La Popular Cash & Carry Market, located just south of 112th Street. Galvis purchased the property in 2002. Previous owners built the store around 1950 and used the building for commercial purposes, allowing up to six customers to angle park in front of it. No curbs or structures define the access point to the building, and vehicles enter and leave the property along the entire SR 7 frontage. Customers and suppliers enter the property only from SR 7, and their vehicles encroach on the State's right of way when parked.

¶4 The Masewiczes own property abutting the Galvis grocery store. The Masewicz property includes a building with five commercial and four residential tenants. The Masewiczes acquired the property around 1989.

¶5 Constructed around 1952, the Masewiczes' building covers the entire street front of the property. Previous owners and their customers parked in front of the building, encroaching onto SR 7. Angled parking spots line the building's front. The tenants, customers, and suppliers can enter the property only from SR 7, and vehicles have access along the entire SR 7 frontage. The Masewiczes currently have an informal arrangement with a neighboring property owner for additional parking spaces.

¶6 Ash Resources, owned by Glenn and Mary Ash, acquired a 7.5-acre parcel on Pacific Avenue in 1993 and has been leasing it to G&L Bark & Supply since 1996. G&L Bark sells landscape materials, such as beauty bark, top soil, and gravel to residential and commercial customers.

---

[1] We refer to the respondents/cross-appellants collectively as "property owners" where they join in the argument.

¶7 The Ash property abuts SR 7 and currently allows vehicle access through two 25-foot-wide driveways not defined by any structures. Suppliers and customers access the property in various types of vehicles including large semi-trucks, dump trucks, and trailers. The suppliers haul an average of two to three semi-loads a day and their dump trucks can be up to 50 feet long. Customers using the property average 50 to 150 per day.

¶8 In fall 2003, the DOT sent the property owners notices about its SR 7 safety improvement project. The notices explained the purposes and methods of the project and informed the property owners that the proposed improvements would eliminate their encroachments on SR 7.[2]

¶9 The DOT plan allowed some of the property owners to use the State's right of way to access their property by leaving spaces open from the cement concrete driveway approach and sidewalk that the DOT intended to build in front of their properties. But the DOT's installation of the driveway approach and sidewalk eliminated the angled parking stalls encroaching on SR 7, leaving two parallel parking spots in front of the Galvis grocery store, three parallel parking spots in front of the Masewicz building, and one 50-foot-wide driveway to the Ash property. The notices explained that the property owners had the right to request an adjudicative proceeding to contest its decision and that the decision would become final if the owners did not file a written request for a hearing within 30 days.

¶10 The property owners requested an adjudicative proceeding to contest the DOT's proposal. After hearing testimony from the property owners, traffic engineers, and appraisers, an administrative law judge (ALJ) concluded in each case that the DOT's proposal provided reasonable access to the properties. The property owners sought review of the ALJ's findings of fact and conclusions of law, and the reviewing officer generally upheld the ALJ's decision with

---

[2] The DOT also noted that RCW 47.32.120 generally prohibits the use of state highway right of way by business patrons or customers.

minor modifications not relevant here. In all instances, the reviewing officer found reasonable access existed under the DOT's proposed SR 7 changes.

¶11 The property owners filed a petition for review in the superior court and the court consolidated the three cases. The property owners contended, in part, that the HAMA facially violates article I, section 16 of the Washington Constitution by allowing local governments to take property rights without just compensation. The DOT moved for partial summary judgment on this issue. On September 13, 2005, the superior court granted the DOT's partial summary judgment motion, ruling that chapter 47.50 RCW does not violate the state constitution.

¶12 On November 28, 2005, the property owners raised their remaining arguments before a different superior court judge. In that hearing, they claimed that the DOT's proposal amounted to an unconstitutional taking as applied to them and that the evidence did not support the reasonableness of the DOT's proposal.

¶13 The trial court found that the ALJ's and reviewing officer's findings established that the DOT had denied the property owners reasonable access to their properties. The trial court also found that a jury, not the ALJ or the reviewing officer, should decide the issues of just compensation and reasonable access. The trial court awarded attorney fees to the Masewiczes ($4,477.97) and to Ash Resources ($5,534.98).

¶14 On April 17, 2006, the trial court denied the DOT's motion for reconsideration and remanded the case to the DOT. The trial court also clarified its ruling, explaining that it did not overrule or modify the September 13, 2005 finding the HAMA facially constitutional.

¶15 The DOT appeals from the judgment and award of attorney fees to the property owners. The Masewiczes and Ash Resources cross-appeal the September 13, 2005 order finding the HAMA facially constitutional.

## ANALYSIS

■■ ¶16 Both the direct and cross appeals challenge the superior court's rulings on summary judgment. We review orders granting summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. *LaMon v. Butler*, 112 Wn.2d 193, 199, 770 P.2d 1027 (1989).

### CONSTITUTIONALITY OF THE HAMA

¶17 We first address the constitutional issues raised in the cross appeal. The property owners argue that the HAMA is unconstitutional both facially and as applied. They contend that the HAMA authorizes the State to take private property without paying compensation and that the constitution entitles them to a jury trial rather than an administrative hearing.

■ ¶18 We review questions of statutory construction de novo. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993). We presume a statute constitutional, with the party challenging it bearing the burden of proving its unconstitutionality beyond a reasonable doubt. *State v. Thorne*, 129 Wn.2d 736, 769-70, 921 P.2d 514 (1996). To prevail on a facial challenge, the challenging party must show that "no set of circumstances exists in which the statute, as currently written, can be constitutionally applied." *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). We must read statutes in their entirety and not in a piecemeal fashion. *Donovick v. Seattle-First Nat'l Bank*, 111 Wn.2d 413, 415, 757 P.2d 1378

(1988). We give full effect to the intent and purpose of the legislation as expressed in the statute. *State v. Malone*, 106 Wn.2d 607, 611, 724 P.2d 364 (1986).

## A. Facial Challenge

¶19 The Masewiczes and Ash Resources contend that case law establishes that abutting property owners have an unlimited right of access to existing highways. Accordingly, they argue that chapter 47.50 RCW "transferred" their access rights to the DOT without compensation. We disagree.

¶20 None of the cases the Masewiczes and Ash Resources cite support their claim that abutting property owners have unlimited access rights. In *Keiffer v. King County*, 89 Wn.2d 369, 372, 572 P.2d 408 (1977), our Supreme Court decided that "[n]ot all impairments of access to property are compensable. Compensation is properly denied in those cases where an exercise of the police power does not directly affect access or the impairment of access is not substantial." Thus, contrary to their assertion, *Keiffer* does not support their argument that *any* impairment of access constitutes a taking.

¶21 Likewise, *McMoran v. State*, 55 Wn.2d 37, 345 P.2d 598 (1959), does not compel compensation in this case. In *McMoran*, the State constructed curbing across the entire frontage of the plaintiff's property, limiting access to an opening 50 feet beyond his property line. 55 Wn.2d at 38. Unlike here, the curbing left the plaintiff without any direct ingress or egress. Because of this, the court held that the State must pay compensation in an amount determined at trial. *McMoran*, 55 Wn.2d at 40-41. Because the safety improvement project provides the Masewiczes and Ash Resources direct access to SR 7, *McMoran* does not apply here.

¶22 Similarly, Galvis relies on *Fry v. O'Leary*, 141 Wash. 465, 252 P. 111 (1927), to claim that property owners have a vested right of access to the entire width of the street

abutting their property. But *Fry* involved an ordinance vacating a 13-foot-wide strip of the road that provided access to the plaintiffs' property. 141 Wash. at 466-67. By contrast, the HAMA does not authorize road closures or vacations; rather, it establishes a framework to regulate access points to state highways, recognizing the constitutional right to compensation for interference with reasonable access. *See generally* RCW 47.50.010. Thus, the HAMA does not cause the loss of access implicated in *Fry*.

¶23 Chapter 47.50 RCW does not permit the State to eliminate all direct access without paying compensation, recognizing that "[e]very owner of property which abuts a state highway has a right to reasonable access to that highway." RCW 47.50.010(3)(b). Thus, the DOT could not eliminate *all* access to abutting property under this section. Further, RCW 47.50.010(5)[3] recognizes the right to compensation under article I, section 16 of the Washington Constitution. These sections demonstrate that the legislature recognized an abutting property owner's right to reasonable access and did not intend for the DOT to apply the statute in a manner that infringes on those rights.

¶24 Finally, Galvis argues that the HAMA violates article I, section 16 of the Washington Constitution because the HAMA authorizes an administrative hearing process rather than a trial before a court or jury to determine if a taking has occurred. Galvis contends that case law establishes the right to have a jury decide the question of damages.

¶25 We agree with Galvis that article I, section 16 of the Washington Constitution guarantees a jury trial to assess the amount of damages due. *See, e.g., Snohomish County v. Hayward*, 11 Wash. 429, 430-31, 39 P. 652 (1895) (owners of property taken for dike construction are entitled to a court proceeding to determine the amount of damages owed); *Askam v. King County*, 9 Wash. 1, 2-3, 36 P. 1097 (1894)

---

[3] RCW 47.50. 010(5) provides: "Nothing in this chapter shall affect the right to full compensation under section 16, Article I of the state Constitution."

(statute authorizing taking of property without first assessing and paying compensation held unconstitutional); *Peterson v. Smith*, 6 Wash. 163, 164-65, 32 P. 1050 (1893) (statute authorizing "road viewers" to assess damages from condemnation held unconstitutional). But none of these cases suggests that property owners have a right to submit to a jury the preliminary question of whether a taking of property has occurred.

¶26 Indeed, our constitution's plain language suggests otherwise. Article I, section 16 provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made . . . which *compensation* shall be ascertained by a jury, unless a jury be waived." (Emphasis added.) Although this language requires that a jury decide the amount of damages, it does not require that a jury decide whether a taking has occurred. Further, by delegating to the DOT the authority to relocate, alter, or close connections if a significant change occurs in use, design, or traffic flow, and to adopt administrative procedures to carry out these functions, the legislature authorized an administrative process to evaluate whether application of the HAMA requires compensation. *See* RCW 47.50.030(2), .080(2).

¶27 Last, nothing in our analysis conflicts with existing case law. Although the *Keiffer* court stated that "the question of degree of impairment of access [i]s an issue of fact" and concluded it must be determined by the fact finder, nowhere does the court specify that the fact finder must be a jury. 89 Wn.2d at 374. Indeed, in *Keiffer*, the trial court acted as the fact finder in determining that the access impairment was sufficient to constitute a taking, and our Supreme Court held that substantial evidence supported the trial court's findings. 89 Wn.2d at 370, 374. Thus, *Keiffer* does not require that a jury determine whether the degree of impairment is compensable.

¶28 Likewise, our holding does not conflict with *Union Elevator & Warehouse Co. v. State*, 96 Wn. App. 288, 980 P.2d 779 (1999). In *Union Elevator*, Division Three held

that summary judgment was inappropriate when there was a material question of fact regarding whether the remaining access was unreasonable. 96 Wn. App. at 289-90. But the plaintiff in *Union Elevator* filed an inverse condemnation claim, not an administrative appeal, in the superior court. 96 Wn. App. at 292. Thus, that case does not address the propriety of resolving disputed factual issues in an administrative proceeding and does not apply here.

¶29 Accordingly, we affirm the trial court's determination that the HAMA does not facially violate article I, section 16 of the Washington Constitution.

## B. As-Applied Challenge

¶30 The property owners further contend that the HAMA is unconstitutional as applied to them. Relying on *Keiffer*, they argue that the safety project is unconstitutional because it deprives them of the parking necessary to carry on their businesses. Again, we disagree.

¶31 The property owners' interpretation of *Keiffer* assumes that the curbing project in that case denied the plaintiff the ability to park on public property. At best, the *Keiffer* opinion remains ambiguous on this issue. Although the dissent states that Keiffer's loss of access was really an inability to use the public right of way for parking, the majority opinion refers only to parking "on respondents' property in front of their buildings." *Keiffer*, 89 Wn.2d at 375 (Dolliver, J. dissenting), 371.

¶32 Because it is not clear whether the claimant in *Keiffer* lost the ability to park on public or private property, we consider it appropriate to interpret the case in a manner that harmonizes it with well-established authority that parking on the public right of way is a privilege, revocable by the State at any time. *See State v. Williams*, 64 Wn.2d 842, 844, 394 P.2d 693 (1964) ("Traffic regulations, including parking while loading and unloading . . . are not part of an abutting property owner's vested right of ingress and egress."); *Sandona v. City of Cle Elum*, 37 Wn.2d 831,

840, 226 P.2d 889 (1951) (parking on the street is a privilege, not a right); *Kimmel v. City of Spokane*, 7 Wn.2d 372, 376, 109 P.2d 1069 (1941) ("[T]he power of the state . . . to regulate the parking of cars on the streets and highways can not [sic] be doubted."); *Billington Builders Supply, Inc. v. City of Yakima*, 14 Wn. App. 674, 677, 544 P.2d 138 (1975) ("[A] benefit to an abutting property owner arising from the regulation of traffic within the borders of a public thoroughfare is a privilege and not a right, the loss of which cannot give rise to compensable damages.").

¶33 The property owners argue that the SR 7 safety improvement project takes their private property without compensation. But " '[t]here can be no inverse condemnation if no property right exists.' " *Showalter v. City of Cheney*, 118 Wn. App. 543, 549, 76 P.3d 782 (2003) (quoting *Granite Beach Holdings, LLC v. Dep't of Natural Res.*, 103 Wn. App. 186, 205, 11 P.3d 847 (2000)). Because the property owners do not have a right to park in the public right of way, the elimination of on-street parking does not give rise to a takings claim. Accordingly, the property owners' argument that the State must pay compensation when it eliminates their privilege to use the public right of way for parking fails.[4]

¶34 Because the privilege to park in the public right of way is not a compensable property right, it is not part of the "reasonable access" guaranteed by the Washington Constitution and the HAMA. The property owners fail to show that the SR 7 safety improvement project amounts to a taking of their property when it eliminates parking spaces encroaching on the public right of way.

---

[4] The property owners are not complaining that the safety improvement project prevents them from using their own property for parking purposes. Rather, their only claim to lost access is that once the project is implemented, their customers and tenants will no longer be able to park in the public right of way. But the owners never had a compensable right to park in the right of way and have not acquired such a right by the State's acquiescence in their improper use. *See* RCW 7.28.090 (state owned property cannot be lost through adverse possession); *Mueller v. City of Seattle*, 167 Wash. 67, 75, 8 P.2d 994 (1932) (parties cannot acquire title to part of a dedicated street through adverse possession).

SUBSTANTIAL EVIDENCE

¶35 In its appeal, the DOT contends that the superior court failed to correctly apply the standard of review. It argues that substantial evidence supports the reviewing officer's findings of fact that the safety improvement project will leave the property owners with reasonable access to their properties.

## A. Standard of Review

¶36 Under the Washington Administrative Procedure Act (APA), chapter 34.05 RCW, appellate courts "look to the administrative record, and not the superior court findings or conclusions, when conducting review." *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994). The party challenging the government action bears the burden of proof. RCW 34.05.570(1)(a); *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 381, 932 P.2d 139 (1997).

¶37 Under the APA, we reverse an administrative decision that (1) violates a constitutional provision on its face or as applied, (2) lies outside the agency's lawful authority or jurisdiction, (3) arises from an illegal procedure, (4) results from an erroneous interpretation or application of the law, (5) lacks substantial evidence, or (6) is arbitrary or capricious. RCW 34.05.570(3); *see also Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

¶38 Washington courts apply a substantial evidence standard to the agency's findings of fact but review de novo its conclusions of law. *Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996). "Substantial evidence is 'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995) (internal quotation

marks omitted) (quoting *Nghiem v. State*, 73 Wn. App. 405, 412, 869 P.2d 1086 (1994)).

¶39 On issues of law, we may "substitute our judgment for that of the administrative body; however, we accord substantial weight to the agency's view of the law it administers." *Valentine v. Dep't of Licensing*, 77 Wn. App. 838, 844, 894 P.2d 1352 (1995). On mixed questions of law and fact, we determine the law independently and then apply the law to the facts as found by the agency. *Valentine*, 77 Wn. App. at 844-45. We review the findings of the final agency decision maker, the reviewing officer, not those of the ALJ who entered the initial order. *Tapper*, 122 Wn.2d at 405-06. We treat unchallenged findings of fact as verities on appeal. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995).

## B. Galvis and Masewicz Properties

¶40 The DOT contends that substantial evidence supports the reviewing officer's finding that Galvis and Masewicz will have reasonable access to their properties under the DOT's proposal and that "The Owners Are Not Entitled to Utilize Public Right-of-Way for Parking." Appellant's Br. at 34 (boldface omitted). We agree.

¶41 Under WAC 468-51-020(19), reasonable access is "an access connection that is suitable for the existing and/or proposed property use and does not adversely affect the safety, operations or maintenance of the highway system." Because neither the statute nor the administrative code defines "access," we give it its ordinary meaning of "[a]n opportunity or ability to enter, approach, [or] pass to and from." BLACK'S LAW DICTIONARY 14 (8th ed. 1999); *see also Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991) (courts may determine the meaning of an undefined word by looking to the dictionary definition).

¶42 Regarding the Galvis property, the reviewing officer found that although the project would eliminate the

parking spaces encroaching on the public right of way, two parking spaces would remain and all vehicles visiting the store would be able to use the new access point. The reviewing officer also concluded that "[t]he loss of property where [Galvis'] customers parked their vehicles was not [Galvis'] property" and "[n]ot being able to use that property for parking does not make [Galvis'] access unreasonable." Administrative R. (AR) at 300000015-16.

¶43 We agree with the reviewing officer that Galvis' access is not unreasonable because Galvis cannot use the public right of way for business parking. As discussed above, parking on the right of way is a revocable privilege. Although we agree that the project may affect Galvis' business, nothing in the record suggests that the project will impede customers and suppliers from entering and exiting the property or using the parking spaces on the property. To the contrary, Troy Cowan, a DOT engineer, testified that that project would allow passenger vehicles as well as delivery trucks to enter and park in the two spaces located on the Galvis property. This testimony is substantial evidence supporting the reviewing officer's finding that the project would not unreasonably limit the ability of vehicles to access the Galvis property and the business located there.

¶44 Likewise, with respect to the Masewicz property, the reviewing officer found that the project would not eliminate the three parking spaces located on their property or unreasonably limit access by any vehicle entering or leaving. Again, Cowan's testimony that the design would allow vehicles, including delivery trucks, to enter and exit the property and park in front, is sufficient to support this finding. We agree with the reviewing officer's conclusion that the design provides reasonable access to the property and that the inability to continue parking on the right of way does not make the access unreasonable.

¶45 Accordingly, we hold that substantial evidence supports the reviewing officer's findings regarding reasonable access to the Galvis and Masewicz properties, and we

reverse the superior court's order overruling the findings and entering judgment on behalf of the property owners.

### C. Ash Resources Property

¶46 The DOT claims that substantial evidence supports the reviewing officer's finding that the DOT's proposal will leave the property with reasonable access because "the ability of vehicles currently accessing the Ash property will not change after [the DOT] consolidates the two existing 25-foot approaches into a single 50-foot approach."[5] Again, we agree.

¶47 Cowan testified that even a single 40-foot-wide access point would leave Ash Resources with reasonable access because "[t]here is lots of room for maneuverability within the site" and the connection is wide enough to accommodate a semi-truck. AR at 300000957. John Nisbet, DOT's traffic engineer, also testified that the DOT's original proposal to leave one 40-foot-wide approach would leave the property with reasonable access.

¶48 Ash Resources fails to show that the reviewing officer's conclusion lacks substantial evidence supporting it. For example, a diagram the DOT submitted shows that a 68-foot semi-truck with a minimum turning radius of 12.54 meters will be able to enter and exit the property using a 15.24 meter (50-foot) driveway. Although Ash Resources' expert, Chris Brown, testified that the DOT's proposal was unreasonable because most properties would require a 60-foot turning radius, the ALJ and the reviewing officer apparently found the DOT's experts more credible, and we do not review that finding. *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 942, 155 P.3d 177 (2007).

¶49 Further, on cross-examination, Brown stated that he would be less concerned with access to the Ash Resources property if the DOT increased the width of the single access point from 40 feet to 50 feet, which the DOT later did.

---

[5] Initially the DOT proposed 40 feet, but after negotiations, it agreed to 50 feet.

Accordingly, substantial evidence supports the reviewing officer's conclusion that "Ash Resources . . . will have reasonable access to and from [SR 7] through a single 50 foot road approach (driveway) after the implementation of the SR 7 Safety Improvement Project." AR at 300000882.

¶50 Accordingly, we hold that substantial evidence supports the reviewing officer's findings regarding reasonable access to the Ash Resources property, and we reverse the superior court's order overruling the findings and entering judgment on behalf of the property owners.

### ATTORNEY FEES

■■■ ¶51 The DOT appeals the superior court's award of attorney fees and costs to the Masewiczes and Ash Resources. Although the record does not contain the legal basis for the award, we assume the superior court applied RCW 4.84.350(1), which provides,

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

Because we conclude that the superior court erred in entering judgment on behalf of the property owners, we also reverse its award of fees and costs.

¶52 The property owners also request attorney fees on appeal under RAP 18.1 and RCW 4.84.350. Because they do not prevail on appeal, we decline to award attorney fees.

¶53 In summary, we affirm the decision finding the HAMA constitutional. We reverse the trial court's just compensation and attorney fee awards and remand.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

Review denied at 163 Wn.2d 1041 (2008).