[No. 3484.   Decided December 12, 1900.]

E. C. NEUFELDER, *Appellant,* v. THIRD STREET AND SU-
BURBAN RAILWAY, *Respondent.*

FIXTURES—RIGHT OF REMOVAL AS BETWEEN MORTGAGOR AND
MORTGAGEE.

Machinery and engines attached to a building by means of
lag screws and bolts, not specially designed for the building, but
of common lot and description, bought and sold in the markets
according to price list and sample, capable of removal without
injury to the premises, and requiring no alteration in the build-
ing to again equip it with similar machinery for like purposes,
are, as between a mortgagor and mortgagee of the realty, fix-
tures that may be removed by the mortgagor, when there was
no intent to have them become a part of the realty.

Appeal from Superior Court, King County.—Hon.
ORANGE JACOBS, Judge.   Affirmed.

*Morris B. Sachs, John P. Hoyt* and *Pierre P. Ferry,*
for appellant.

*Bausman, Kelleher & Emory,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—In 1884 the Western Mill Company,
being then the owner of certain real property, mortgaged
the same to Myer Lewis to secure a loan made to it on that
day by Lewis.   The mortgage was in the usual form of a
real estate mortgage, and the description of the property
was ample to cover everything on the mortgaged premises
that could properly be said to be a part of the realty, but
contained nothing from which it could be inferred that
it was intended to cover the personal property then on the
premises, or which might thereafter be put thereon by the
mortgagor.   At the time of the execution of the mortgage
there was a sawmill on the land having a capacity of about

45,000 feet of lumber per day. In 1888 and 1889 the mort-
gagor erected a new sawmill building thereon, and fitted it
out with machinery in part taken from the old mill and
in part newly purchased, giving the new mill a capacity
of about 100,000 feet of lumber per day. The old build-
ing was turned into a planing mill and sash and door
factory, and was fitted out with the usual machinery
used in conducting a business of that character. Subse-
quent to that time the property was sold and conveyed
to the respondent herein. The mortgage was not paid,
and in 1895 a suit to foreclose the same was duly com-
menced by the then owner of the mortgage. While this
foreclosure proceeding was pending, respondent removed
from the premises certain of the machinery used in the
sawmill and sash and door factory. Subsequent thereto
the real property was sold under a decree of foreclosure
of the mortgage, and purchased by the mortgagee at a
sum less than the amount the court found to be due upon
the mortgage debt. This is an action brought by the suc-
cessor in interest of the mortgagee to recover damages al-
leged to have been suffered because of the removal of
the property; the contention being that the property re-
moved was a part of the realty. The trial court found the
following facts:

"I find that all the machinery in the planing mill and
sash and door factory removed by the defendant herein
as aforesaid was attached to the building by lag screws
for the purpose of steadying it while in use. That all
of this machinery was capable of being moved from the
premises without material injury thereto, and that it
was in fact removed by the defendant without material
injury thereto. I find that all the machinery in the plan-
ing mill and sash and door factory, removed as aforesaid
by the defendant, was machinery of common sort and
description; that it was machinery of a sort bought and
sold by price list and sample, according to catalogues,

and that it was not specially made or designed for that building or those premises; that it can be used as well in any other premises of like nature, and that like machinery can be purchased and put in use upon these premises for the purposes of a planing mill and sash and door factory without alteration of the premises.

As to block 'A' (the sawmill property), I find that with the exception of one engine, hereinafter referred to, all the machinery and apparatus in the sawmill thereon, removed as aforesaid by defendant, was machinery of common lot and description, bought and sold, in the markets according to price list and sample and found in catalogues; that it was not more specially adapted to that structure than to any other milling structure; that it can be used in any other mill as well as in that; that when the mill itself was built some of this machinery was contemplated, but that it was built substantially in the manner of any other sawmill, and that it can again be equipped with machinery suitable for its purposes without alteration of the structure.

I find also that all the machinery on block 'A' so removed was never intended to become a part of the premises; that it was attached to the mill structure only for the purpose of steadying it while in use, that it could be removed from the premises without any material damage or alteration thereof.

The machinery in the mill removed by the defendant was in some cases fastened to the floor by screws or lag bolts; in other cases the machinery was fastened to the frame of the building by the use of bolts of various length, averaging in size from a half inch in diameter to an inch and one-quarter in diameter. The engines in some instances were placed upon a foundation of timbers of several thicknesses or layers. These timbers were bolted to the framework of the mill, in some cases, and were held together with iron bolts, extending into or through them, so as to hold them solidly in place. The engines were bolted to this foundation of timbers. In most if not all cases the engine could be removed by unscrewing the nuts and lifting it off the bolts."

As a conclusion of law therefrom the court found that the property taken (with the exception of the engine mentioned) was personal property, and entered a judgment denying the right of appellant to recover therefor.

The appellant contends that the property removed was attached to the realty in such a manner as to make it, especially as between a mortgagor and mortgagee, a part thereof, and has brought to our attention many cases, some of which, at least, fully support his contention. This question, however, is no longer an open one in this state. This court has by repeated decisions established the law that property of this character, attached as this was to the realty, is not a part thereof, but is personal property, and may be removed therefrom by its owner without incurring liability to any person who may have a lien on such real property. In *Cherry v. Arthur,* 5 Wash. 787 (32 Pac. 744), the question was whether a planer used in a sawmill, which was bolted to the floor in such a way as to keep it from moving from its place when being used, was a part of the realty or was personal property. In that case the court said:

"In ascertaining whether such a machine does become a part of the realty in favor of mortgagees, the rule is, that the manner, purpose and effect of annexation to the freehold must be regarded. If a building be erected for a definite purpose, or to enhance its value for occupation, whatever is built into it to further those objects, becomes a part of it, even though there be no permanent fastening such as would cause permanent injury if removed. But mere furniture, although some fastening be necessary to its advantageous use, is removable. Peculiarly subject to this rule are machines which can be used in one place as well as another, and which add nothing to the building, though they may be of advantage to the business conducted there."

In *Chase v. Tacoma Box Co.,* 11 Wash. 377 (39 Pac. 639), the question was whether the machinery of a box factory attached to the land in substantially the same manner as the property in this case was attached was a part of the realty. After an extended review of the decisions of courts of other states, as well as the case of *Cherry v. Arthur,* it was held that the machinery, notwithstanding the manner in which it was affixed to the realty, still retained its character of personalty. In the course of the opinion the court, after quoting from *Cherry v. Arthur* the paragraph set out, said:

"We are entirely satisfied with what is here said upon the subject, and think it best accords with reason and modern authority."

In *Washington National Bank v. Smith,* 15 Wash. 160 (45 Pac. 736), the machinery in question was, as the record shows, "a planer and matcher, a surfacer and sizer, a gang edger, and a double block shingle machine." The machines were fastened to the floor of the mill in which they were then being used by means of lag screws and bolts running through the feet of the machines into the floor and timbers of the mill upon which they rested. The contest was one between mortgagor and mortgagee, and one of the questions was whether the machines formed a part of the realty or were personal property. Passing on that question, the court said:

"No general rule can be promulgated under which it can be determined whether a particular piece of machinery is or is not a fixture to the real estate with which it is used. So many considerations enter into the determination of this question that no general rule can be stated which will apply in all cases. Not only can no general rule be adduced from the decisions of the courts which will apply to all cases, but it will appear from an examination of the decisions upon this question that there is

a great want of harmony even where the circumstances were identical. There is a class of cases which have adopted a rule which, if applied to the facts shown by the evidence to have existed as to the placing of this machinery in the mill building in which it was used, would require us to hold that such machinery was a fixture and passed to the mortgagee as a part of the real estate.

A leading case of this kind is *Ottumwa Woolen Mill Co. v. Hawley,* 44 Iowa, 57. But the learned court which decided it, though apparently well satisfied with the conclusion to which it had come, was forced to admit that a contrary doctrine had been established by the courts of a majority of the states which had passed upon the question. This machinery was attached to the building in substantially the same manner as was that in controversy in the case of *Chase v. Tacoma Box Co.,* 11 Wash. 377 (39 Pac. 639), and *Cherry v. Arthur,* 5 Wash. 787 (32 Pac. 744), and under the rule announced in those cases, which rule we believe to be supported by the weight of authority, it must be held to have been personal property and not such a fixture as to pass to the mortgagee."

This case also answers the argument of the appellant to the effect that a different rule applies where the controversy is between a mortgagor and mortgagee than is applicable where the controversy is between the mortgagee and one claiming adversely to the mortgagor. On this question it was said:

"If the question as to the nature of this property had arisen between the mortgagee named in said chattel mortgage and the appellant, there could be no doubt but that under the rule heretofore announced by this court it would be held to be personal property, and in our opinion the rule was not changed by the fact that the question was raised between the parties to the real estate mortgage."

Further, on the question what will in this state be considered personal property, see: *German Savings & Loan Society v. Weber,* 16 Wash. 95 (47 Pac 224, 38 L. R. A.

267); *Philadelphia Mtge. & Trust Co. v. Miller,* 20 Wash. 607 (56 Pac. 382, 44 L. R. A. 559, 72 Am. St. Rep. 138).

Concluding, as we do, that the case at bar falls within the rule of these cases, it is unnecessary to discuss the other questions suggested.

The judgment is affirmed.

DUNBAR, C. J., and REAVIS and ANDERS, JJ., concur.