[No. 26086-1-III.   Division Three.   May 15, 2008.]

UNION ELEVATOR & WAREHOUSE COMPANY, INC., *Appellant*, v.
THE STATE OF WASHINGTON, *Respondent*.

596

*Kevin W. Roberts* (of *Dunn & Black, PS*), for appellant.

*Robert M. McKenna, Attorney General, Steve E. Dietrich, Senior Counsel,* and *Karen S. Small, Assistant,* for respondent.

¶1 SCHULTHEIS, C.J. — In 1998, Union Elevator & Warehouse Company, Inc., was forced to relocate its East Lind grain elevator after a Washington State Department of Transportation (DOT) highway project permanently closed Union Elevator's main access road, effectively putting the elevator out of business. A jury awarded damages to Union Elevator for losses resulting from the impaired access to its business.

¶2 Union Elevator built another grain elevator and requested relocation compensation under our state's relocation assistance and real property acquisition policy act (Act), chapter 8.26 RCW. The largest portion of the claim was for the costs of installing machinery and equipment at the new site. The DOT denied the request, arguing that the equipment was real property and therefore ineligible for reimbursement under the Act. The superior court agreed, denying Union Elevator's request for relocation assistance. Union Elevator appeals the superior court judgment. Its primary contention is that the DOT and superior court erred in classifying the equipment at issue as fixtures.[1] We agree. Accordingly, we reverse and remand.

FACTS

¶3 This is the second time this case is before us. In the first appeal, we reversed the summary judgment dismissal of Union Elevator's suit for damages regarding impaired access to its grain elevator as a result of the DOT's highway project. *Union Elevator & Warehouse Co. v. State*, 96 Wn. App. 288, 980 P.2d 779 (1999). Upon remand for trial, the

---

[1] Union Elevator also contends that it did not receive a fair review hearing. We do not reach this issue because we reverse on other grounds.

jury found that the DOT had taken Union Elevator's access and awarded damages of $166,000.

¶4 During this time, Union Elevator constructed a replacement grain elevator about 10 miles from the East Lind facility. Due to construction costs, it could not afford to replicate the East Lind facility and the new elevator was about one-half the size of the East Lind facility. Union Elevator purchased substitute equipment for the new elevator instead of moving the machinery from the East Lind facility. The company's general manager explained that the old equipment could not be used at the new site due to structural differences in the new building, particularly the lack of a concrete elevator and crib elevator. It cost $459,000 to build the new facility.

¶5 After the taking issue was resolved and the replacement elevator completed, Union Elevator pursued relocation assistance under the Act. In May 2001, it submitted a $336,934.41 claim for the following expenses:

A. *Moving expenses*

| | |
|---|---|
| 1. Transportation costs, including the removal of grain from East Lind site | $20,408.63 |
| 2. Cost of moving machinery and equipment from East Lind facility | $255,249.00 |
| 3. Cost of new permit at Gering Station | $1,541.00 |
| 4. New sign | $774.72 |
| 5. Search for a replacement site | $2,635.00 |
| 6. Storage of grain for first 12 months | $17,825.88 |
| 7. Cost for new utilities | $20,500.00 |

B. *Re-establishment expenses*

| | |
|---|---|
| Expenses for modifications to replace property | $17,997.18 |

Administrative Record (AR) at 33-34.

¶6 The DOT denied Union Elevator's claim and its subsequent appeal, contending Union Elevator was not displaced. An administrative law judge (ALJ) disagreed, ruling that Union Elevator was entitled to relocation assistance. The ALJ explained:

[DOT] took a property interest from Appellant (its access to its property and the resulting financial benefits from ownership of said property) in furtherance of its plan to upgrade [State Route] 395. This case is exactly the type of case that Relocation Assistance benefits were designed to cover. The relocation statutes provide for fair treatment to those who are displaced as a direct result of public works programs. . . . Appellant's East Lind facility was basically put out of business by this project. . . . [W]hen a business has its reasonable, adequate, and commercially practicable access taken, it becomes displaced as a matter of law.

AR at 498.

¶7 In April 2004, the DOT agreed to pay $62,200 of Union Elevator's claim, which included the cost of moving the grain, expenses related to the search for a new location, a building permit and business sign, connection to utilities, and modifications of the property. However, it rejected the largest component of Union Elevator's claim—the $255,000 for the costs of installing the equipment at the new facility. The case proceeded to an adjudicative hearing on February 7, 2005.

¶8 Randy Roth, Union Elevator's general manager, detailed the costs of building the new elevator and explained how the company arrived at its amended request of $235,000 for equipment and machinery. He testified that Union Elevator obtained a $255,000 bid for the estimated cost of moving equipment to the new facility. This bid itemized all the equipment, which included pit grates, a manlift, a scale, conveyers, elevator legs, the spouting system, and augers.

¶9 Mr. Roth presented construction invoices and explained that in computing the moving costs, he matched invoices for labor and materials with their equivalents in the bid. He then submitted the lesser of the two amounts for

reimbursement, as provided in former WAC 468-100-303(3) (1989).[2] The DOT did not dispute the amount.

¶10 Rick Horpedahl, Union Elevator's operations manager, described the operation of a grain elevator. He explained that the equipment can be broken down into parts and easily moved and that Union Elevator moves its equipment between its various facilities. He also noted that the company regularly salvages equipment from its various facilities. Finally, he testified that grain elevators are used for purposes other than moving and storing grain. He also testified that Union Elevator had been approached by farmers to use the East Lind facility as a vodka distillery.

¶11 David Comos, a maintenance supervisor for Ritzville Warehouse Company, corroborated Mr. Roth's testimony, stating that grain elevator equipment is easily moved and sold to other elevators. He testified that trade magazines buy and sell equipment comparable to the equipment at issue in this case. And he described several grain elevators from which the equipment had been removed and used for other purposes.

¶12 The DOT presented the testimony of Michael Ward, the administrator for its relocation program. He testified that Union Elevator was not eligible for the equipment reimbursement because the equipment at issue was real property and therefore not compensable under the Act.

¶13 The ALJ concluded that Union Elevator was entitled to reimbursement for the expenses of installing the equipment at the replacement site. In the proposed decision and order, she wrote, "the machinery and equipment at issue are personal property. As such, the estimated costs associated with disconnecting, dismantling, removing, reassembling, and reinstalling the machinery and equipment are reimbursable under [former] WAC 468-100-303." AR at 732.

¶14 The DOT filed for review of the ALJ's decision. The director of the DOT's environmental and engineering pro-

---

[2] Former WAC 468-100-303(3) permits a displaced entity to "take full responsibility for the move of the business" and the agency may make payment for a self-move based upon "the lower of two acceptable bids."

grams determined that the machines and equipment were fixtures because they were functionally integral to the operation of the grain elevator. The director also noted tax and property appraisals classified the equipment as real property and the fact that Union Elevator had not moved any of the equipment from the East Lind facility. The superior court affirmed the DOT's final order. Union Elevator appeals the superior court's decision.

## ANALYSIS

¶15 At the outset we address the DOT's request that we dismiss the appeal because Union Elevator's brief fails to comply with RAP 10.3(a)(4), which requires a "concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The DOT claims that Union Elevator's failure to comply with this rule requires dismissal of its entire appeal. We disagree.

■ ■ ¶16 A reviewing court will waive technical violations of the appellate rules to reach the merits when the briefing makes the nature of the challenge clear, the violation is minor, there is no prejudice to the opposing party, and there is minimal inconvenience to the appellate court. RAP 1.2(a); *State v. Neeley*, 113 Wn. App. 100, 105, 52 P.3d 539 (2002). In this case, Union Elevator fails to address all of its assignments of error. However, this does not require wholesale dismissal of the appeal because most of its assignments of error pertain to the primary issue in this case—the classification of the equipment as real or personal property, an issue fully briefed by Union Elevator.

■ ¶17 The remaining assignments of error involve the DOT's rejection of Union Elevator's request for certain storage costs. Union Elevator fails to address these assignments of error in its brief; accordingly, our review will be confined to those assignments of error relating to the relocation costs pertaining to the installation of the equipment at the replacement site.

*Standard of Review*

¶18 In reviewing administrative action, we apply the Washington Administrative Procedure Act, chapter 34.05 RCW, standards directly to the record before the agency. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); *Utter v. Dep't of Soc. & Health Servs.*, 140 Wn. App. 293, 299, 165 P.3d 399 (2007). The party challenging the government action bears the burden of proof. RCW 34.05.570(1)(a); *Heidgerken v. Dep't of Natural Res.*, 99 Wn. App. 380, 384, 993 P.2d 934 (2000).

¶19 We reverse an agency order if it (1) violates a constitutional provision, (2) lies outside the agency's jurisdiction, (3) arises from an illegal procedure, (4) is based on an erroneous interpretation or application of the law, (5) lacks substantial evidence, or (6) is arbitrary or capricious. RCW 34.05.570(3); *Tapper*, 122 Wn.2d at 402. We apply a substantial evidence standard to the agency's findings of fact but review de novo its conclusions of law. *Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996). We review the findings of the final agency decision maker, not those of the ALJ who entered the initial order. *Tapper*, 122 Wn.2d at 405-06.

*Relocation Assistance and Real Property Acquisition Policy Act*

¶20 The central issue before us is whether Union Elevator is entitled to compensation under the Act. The purpose of the Act is to "establish a uniform policy for the fair and equitable treatment of persons displaced as a direct result of public works programs . . . and to minimize the hardship of displacement on such persons." RCW 8.26-.010(1)(a). The Act provides a broad range of financial assistance in condemnation cases, including various relocation assistance services, reimbursement for storage costs, moving personal property, reestablishment expenses, and the purchase of substitute property. RCW 8.26.035(1)(a)-(d), .065. Compensation under this provision is separate

from the compensation in the original condemnation action for the realty.

¶21 RCW 8.26.035(1)(a) provides that a displaced person or business may qualify for reasonable moving expenses, including "[a]ctual reasonable expenses in moving himself or herself, or his or her family, business, farm operation, or other personal property." The key issue here is whether the equipment and machines at issue are items of personal property or fixtures. We discuss the law of fixtures below.

*The Law of Fixtures*

¶22 Under Washington law, real property includes fixtures, such as machinery that is permanently used in a particular location. *Dep't of Revenue v. Boeing Co.*, 85 Wn.2d 663, 667, 538 P.2d 505 (1975). Classification of property as real or personal property is a mixed question of law and fact. *Id.* It is well recognized that determining what constitutes a fixture as opposed to personal property is a difficult task that depends on the particular facts of each case. Neither chapter 8.26 RCW nor its companion regulations set forth a definition of fixtures. Therefore, we turn to the common law for guidance.

¶23 Under the common law, the determination of whether an item is a fixture or personal property turns on a three-part test. *Id.* Under the test, personal property becomes a fixture if (1) it is actually annexed to the realty, (2) it is adapted to the use of the realty, and (3) the annexing party intended a permanent attachment. *Id.* Each requirement must be met before an item may be classified as a fixture. *Id.* at 668.

¶24 Intent is the most important element of the fixtures test. *Glen Park Assocs., LLC v. Dep't of Revenue*, 119 Wn. App. 481, 490, 82 P.3d 664 (2003). Evidence of intent is gathered from the circumstances at the time of installation. *Boeing*, 85 Wn.2d at 668. The court determines the party's intent to affix items through objective evidence rather than through the party's subjective belief. *Id.* Factors pertinent to intent include "the nature of the article affixed, the

relation and situation to the freehold of the annexor, the manner of annexation, and the purpose for which annexation is made." *Id.*

¶25 The *Boeing* case is instructive regarding the classification of fixtures. The Boeing Company operated an assembly plant that manufactured and assembled the Boeing 747 airplane. Assembly of the 747 required the use of fixed assembly jigs. These jigs were immense tools that weighed anywhere from 20 to 120 tons and were specially designed to hold the component parts of the 747. *Id.* at 664. They could not be used in the assembly of any other airplane and were bolted to the floor. *Id.* Despite their size and weight, the jigs could be disassembled and moved. Boeing had moved similar jigs between its plants for other projects. *Id.* at 664-65.

¶26 The question of the classification of the jigs as real or personal property arose when Boeing sought manufacturing tax credits for the jigs as fixtures. The superior court held that the jigs were not fixtures. The Supreme Court affirmed. Despite finding two factors in Boeing's favor—a presumption that Boeing intended the annexation to benefit the freehold and that the jigs were necessary to the production of the Boeing 747—the court concluded that Boeing had not intended to permanently affix the jigs to the freehold. *Id.* at 669.

¶27 The court cited four factors to support its conclusion: (1) the alleged permanency of the jigs was dependent upon Boeing's continued use of the building to manufacture the 747 (the future use of the building was disputed); (2) the jigs could be removed without damage to the building, thus evincing an intent that they could be easily moved upon any changes in the program; (3) the jigs were designed to be easily disassembled, and smaller jigs had been moved from plant to plant in other programs; and (4) Boeing reported the jigs as personal property for tax purposes. *Id.* at 669-70.

¶28 The DOT argues that the machines and equipment at issue in this case are fixtures because they are functionally integral to the grain elevator and were classified as real

property for real estate appraisals and tax purposes, and Union Elevator had not moved the equipment from its East Lind facility in nine years. While these factors support the DOT's position, we arrive at a different conclusion, finding that the DOT failed to establish the second and third prongs of the fixtures test.

¶29 The DOT focuses on the second and third prongs, correctly noting that the equipment at issue was crucial to the operation of the grain elevator and indicative of Union Elevator's intent to permanently affix the equipment to the elevator. But the fact that an item is essential to the use or function of a building is not dispositive of whether it was intended to be a permanent part of the realty. In one of the earliest Washington cases dealing with fixtures, the court noted:

> We do not think that mere adaptability of machinery to use in the business which happens to be conducted upon the realty is of itself enough to give the character of realty to the machinery. To constitute machinery and apparatus fixtures, it is not alone sufficient that they be placed in the shop or factory with the intent that they should remain there for permanent use, but the intent must be to make them a permanent accession to the freehold.

*Chase v. Tacoma Box Co.*, 11 Wash. 377, 385, 39 P. 639 (1895).

¶30 Here, the machinery was certainly crucial to operating the elevator, but the testimony established that it was just as suitable in most of its other facilities. *Neufelder v. Third Street & Suburban Railway*, 23 Wash. 470, 63 P. 197 (1900) illustrates this point. In *Neufelder*, a sawmill owner removed equipment and machinery from his sawmill during foreclosure proceedings. The mortgagee sued to recover damages for the value of the equipment. *Id.* at 471. The court ruled in favor of the sawmill owner, holding that with the exception of an engine, the machinery at issue was personal property. It reasoned:

> "[The machinery] was not more specially adapted to that structure than to any other milling structure; that it can be

used in any other mill as well as in that; that when the mill itself was buil[t] some of this machinery was contemplated, but that it was built substantially in the manner of any other sawmill, and that it can again be equipped with machinery suitable for its purposes without alteration of the structure."

*Id.* at 472 (quoting trial court).

¶31 Here, too, Union Elevator used its equipment interchangeably between its grain elevators. It had moved all of the equipment and machinery from one elevator to another. Mr. Comos and Mr. Roth testified that grain elevator equipment is commonly moved between different facilities and sold to other grain elevators. Additionally, the machinery is designed to be broken down into parts and easily moved. For example, Mr. Horpedahl explained that gravity spouts were simply bolted to the concrete and that the augers could be removed without damaging the grain elevator. As the *Boeing* court stated, "It is difficult to ascribe an intent to Boeing that the jigs be a permanent part of the realty when they can be so readily moved out of the plant and thus transformed back into personalty." *Boeing*, 85 Wn.2d at 669.

¶32 Additionally, there was evidence that the grain elevator could serve multiple purposes. Mr. Comos testified that he knew of several elevators that had done this. Mr. Horpedahl knew of a company that purchased a grain elevator and converted it to a fertilizer plant. He also testified that Union Elevator had been approached by farmers contemplating the use of the facility as a vodka distillery.

¶33 Although some facts support the DOT's assertion that the equipment is real property, we conclude the evidence more strongly supports an inference that Union Elevator did not intend to permanently affix its equipment to the elevator. Accordingly, the items at issue are personal property and therefore compensable under the Act.

¶34 Our conclusion is further supported by the purpose of the Act, which is to provide fair and equitable treatment

for displaced persons and minimize hardship as a result of government takings. A federal takings case notes that in passing the federal relocation act, Congress indicated a willingness to depart from traditional methods of evaluating property because such methods result in inequitable treatment for many people displaced by public action. *Pou Pacheco v. Soler Aquino*, 833 F.2d 392, 396 (1st Cir. 1987).

¶35 Here, the DOT's highway project virtually destroyed Union Elevator's East Lind grain elevator business. This taking forced Union Elevator to build a new elevator so that it could keep its customers in the Lind area. It was not feasible to move the equipment from its East Lind facility. Therefore, Union Elevator spent $235,000 on substitute machinery and equipment at the replacement site. Union Elevator should not have to bear the burden of the state's highway project.

¶36 The DOT's final arguments are that Union Elevator failed to adequately document the costs of the equipment and the ALJ erred in relying on the moving bid because it is hearsay. We reject these arguments. WAC 468-100-207(1) provides that "[a]ny claim for a relocation payment shall be supported by such documentation as may be reasonably required to support expenses incurred, such as bills, certified prices, appraisals, or other evidence of such expenses."

¶37 Here, Union Elevator provided numerous invoices itemizing the labor and materials that went into the replacement site. Furthermore, the ALJ did not err in using the bid as a point of comparison. Hearsay evidence may be admitted at an administrative hearing if the presiding officer determines that it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs. *Pappas v. Employment Sec. Dep't*, 135 Wn. App. 852, 146 P.3d 1208 (2006). In any event, the DOT failed to object to the Western Millwrights bid at the administrative hearing. Therefore, its objection is waived on appeal.

*Attorney Fees*

██ ██ ¶38 Union Elevator requests attorney fees pursuant to RAP 18.1 and RCW 4.84.350, the state equal access to justice act. The DOT does not respond. RAP 18.1(a) provides, "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule." Further, in Washington, a prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties. *Landberg v. Carlson*, 108 Wn. App. 749, 33 P.3d 406 (2001).

¶39 RCW 4.84.350(1) provides, "[A] court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified." The government has the burden of showing that the fees should be denied. *Aponte v. Dep't of Soc. & Health Servs.*, 92 Wn. App. 604, 623, 965 P.2d 626 (1998). Substantial justification requires the agency to show that its position is reasonable both in law and fact. *Id.* The DOT does not address the issue and provides no argument to show that its position is legally and factually reasonable. Accordingly, Union Elevator as the prevailing party is entitled to attorney fees on appeal.

¶40 Reversed and remanded for proceedings consistent with this opinion.

BROWN and KULIK, JJ., concur.