IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RUBEN C. LEON, | ) | No. 37014-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| McCAIN FOODS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — McCain Foods USA, Inc. (McCain Foods)[1] appeals

after the trial court awarded Ruben Leon additional time-loss compensation and pension

benefits. McCain Foods mostly takes issue with the trial court's factual findings.

Because substantial evidence supports those findings, we affirm.

FACTS

*Summary of injury*

Ruben Leon worked for McCain Foods for approximately 25 years. On April 27,

2012, Leon and a coworker were sent to unplug a clogged valve underneath a fryer. They

---

[1] Ruben Leon's initial pleading filed with the Adams County Superior Court is captioned "Ruben C. Leon v. McCain Foods." Clerk's Papers (CP) at 1. As reflected in the record, the employer's correct name is McCain Foods USA, Inc.

were told the oil in the fryer was cool and they could safely work on the plug. This was not true. When Leon started to work on the valve, scalding hot oil gushed out over his face and upper body.

Leon's coworker pulled him to safety and put him in cold water. An ambulance arrived and took Leon to a nearby hospital. Due to the severity of his burns, Leon was flown from the local hospital to Harborview Medical Center in Seattle and admitted to the burn unit. Leon spent a considerable period of time at Harborview Medical Center where he received a number of surgeries and skin grafts. He continued to receive follow-up treatment from Harborview until his final skin graft in 2014. Leon takes morphine three times a day for pain, as prescribed by his doctor, Dr. Randel Bunch.

In February 2015, McCain Foods offered Leon a forklift driver position. Leon rejected the offer because he believed he could not safely operate a forklift, given his daily use of morphine and difficulty sleeping at night.

*Procedure*

The Department of Labor and Industries provided Leon time-loss compensation for almost three years. By order of January 26, 2016, the Department closed Leon's claim. The order awarded Leon time-loss compensation through April 16, 2015, and

$96,363.84 for permanent impairment of his left upper extremity, his skin, and his mental health.

Leon timely appealed the Department's order to the Board of Industrial Insurance Appeals. He asserted he was temporarily totally disabled from April 17, 2015, through January 25, 2016, and permanently totally disabled thereafter. Industrial Appeals Judge (IAJ) Heidi Bolong scheduled an evidentiary hearing for late October 2016. The parties presented live and depositional testimony. Leon's lay witnesses described how the industrial accident changed Leon from a friendly, independent person into an angry, dependent person. These testimonies were punctuated by evidence that Leon had missed only one day of work during 25 years at McCain Foods, but now was dependent on others to perform simple tasks. In March 2017, IAJ Bolong issued her "Proposed Decision and Order" that granted Leon's requested relief. Clerk's Papers (CP) at 45.

McCain Foods appealed the Proposed Decision and Order to the Board. The Board disagreed with the proposed decision and entered its own findings of fact and conclusions of law that confirmed the Department's closing order and awards.

Leon then appealed the Board's decision to Adams County Superior Court. The court issued a brief letter decision, which we quote in part:

> [A]fter reviewing the entire record on a de nov[o] basis, I believe that a fair preponderance of the evidence overcomes the presumption of correctness enjoyed by the Board's decision and instead preponderates in conformity with the Proposed Decision and Order of Industrial Appeals Judge Bolong of March 7, 2017.
>
> I agree with Judge Bolong that the expert evidence and particularly the lay evidence, indicates that Mr. Leon's horrifying experience, functional illiteracy, twice [sic] daily morphine intake, PTS[D], major depression and untreatable mental health impairment prevented him from accepting even the substantially dumbed down forklift operator position offered by defendant at the same plant which plaintiff can't even stand to look at and which [exudes] the terrifying smell of hot potato frying oil. Mr. Leon would want nothing more but to got [sic] back to work, but he cannot do so and probably never will. He only missed one day of work in 25 previous years at the plant.
>
> The Board's Decision and Order of May 19, 2017 shall be reversed and the matter shall be remanded to the Department to reinstate the March 7, 2017 proposed Decision and Order of the Industrial Appeals Judge and take action in conformity therewith.

CP at 497. Because the trial court found that the evidence conformed to the Proposed

Decision and Order, we attach it as an appendix to this opinion.

Four months later, the trial court entered findings of fact, including:

2.    Ruben Leon sustained an industrial injury on April 27, 2012, when he was splashed with hot oil while unplugging a valve underneath a fryer, resulting in burns on his left arm, left leg, and the right side of his face, as well as post-traumatic stress disorder, somatic symptom disorder, and major depressive disorder.

3.    Mr. Leon is a 49-year-old man with a sixth-grade education, work experience as a potato peeler, receiver, machine operator, and in maintenance, who is illiterate in English.

4

4.    Mr. Leon is unable to maintain attention and concentration for extended periods, to get along with coworkers or peers without behavioral extremes, and to interact appropriately with the general public, as of April 17, 2015.

5.    Mr. Leon [w]as unable to perform or obtain gainful employment on a reasonably continuous basis from April 17, 2015, through January 25, 2016, due to the residuals of the industrial injury and taking into account the claimant's age, education, work history, and preexisting conditions.

6.    As of April 17, 2015, Mr. Leon's conditions proximately caused by the industrial injury were fixed and stable.

7.    Mr. Leon was unable to perform or obtain gainful employment on a reasonably continuous basis as of January 26, 2016, due to the residuals of the industrial injury and taking into account the claimant's age, education, work history, and preexisting conditions.

CP at 500-01.

The trial court remanded the appeal to the Department with instructions to award Leon time-loss compensation from April 17, 2015, through January 25, 2016. It also ordered the Department to award pension benefits to Leon effective January 26, 2016, as a permanently and totally disabled injured worker.

McCain Foods timely appealed the trial court's decision.

ANALYSIS

McCain Foods argues (1) Leon failed to meet his burden of proof to overcome the correctness of the Board's decision, (2) the trial court erred by failing to give Leon's treating physician special consideration, (3) the preponderance of medical and vocational

5

opinions establishes Leon is capable of performing the offered forklift position, and

(4) the Board correctly sustained the Department's finding that Leon had a category 3

permanent partial disability mental health impairment. We first address McCain Foods'

second argument and then address its remaining three arguments together.

A.    SPECIAL CONSIDERATION TO ATTENDING PHYSICIAN'S OPINIONS

McCain Foods contends the trial court erred by not giving sufficient consideration

to the opinions of Dr. Bunch, Leon's attending physician.

In a workers' compensation case, the opinions of the claimant's attending

physician must be given special consideration. *Hamilton v. Dep't of Labor & Indus.*, 111

Wn.2d 569, 571, 761 P.2d 618 (1988). However, the *Hamilton* court makes clear:

> "We are not saying that the trier of the facts should believe the
> testimony of the treating physician; the trier of the facts determines whom it
> will believe; but it should, in its findings, indicate that it recognizes that we
> have, in several cases, emphasized the fact that special consideration should
> be given to the opinion of the attending physician."

*Id.* at 572 (quoting *Groff v. Dep't of Labor & Indus.*, 65 Wn.2d 35, 45, 395 P.2d 633

(1964)).

McCain Foods contends the trial court did not give Dr. Bunch's opinions special

consideration. Leon contends it did, but it did not believe Dr. Bunch over the rest of the

evidence. The disagreement boils down to a key question: Did the trial court give Dr.

Bunch's opinions special consideration?  If it did, then the trial court's decision on whether it believed Dr. Bunch or not was a question of credibility, which this court will not examine.  *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 22, 277 P.3d 685 (2012).

As stated in *Hamilton*, a trial court should enter a finding of fact that indicates it recognized the special consideration deserved by an attending physician.  Here, the trial court failed to do this.  But we do not believe this failure requires reversal or remand.

Both parties briefed this rule and later argued it to the trial court.  The trial court itself mentioned this rule, calling it a "particular" consideration before defense counsel interrupted and noted the phrase was "special" consideration.  Report of Proceedings at 21.  Nothing in the record indicates the trial court did not know or correctly apply the rule.  While it is true the trial court did not enter a written finding in this regard, that failure has more to do with claimant counsel's preparation of the findings of fact than any confusion on the part of the trial court.  We are confident the trial court knew and correctly applied the rule that required it to give Dr. Bunch's opinions special consideration.

B.    SUFFICIENCY OF THE EVIDENCE

McCain Foods contends the trial court's findings are not supported by substantial evidence. It argues the overwhelming medical and vocational evidence supports the Board's decision and this court should reverse the trial court's findings of fact. Leon notes McCain Foods failed to assign error to any of the trial court's findings and urges us to treat those findings as verities.

*Failure to assign error to findings of fact*

RAP 10.3(g) requires a party to separately assign error to each finding of fact the party challenges and refer to the challenged finding by number. An "appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). Nevertheless, we will waive a strict application of this rule if the briefing makes clear the nature of the challenge, the violation is minor, there is no prejudice to the opposing party, and there is minimal inconvenience to the appellate court. *Union Elevator & Warehouse Co. v. State*, 144 Wn. App. 593, 601, 183 P.3d 1097 (2008). It is clear that McCain Foods is challenging the trial court's findings of fact 4, 5, and 7, and Leon provided a full rebuttal to the factual challenges in his brief. We are not inconvenienced by McCain Foods'

8

technical rule violation and will address its sufficiency of evidence challenge on the merits.

*Sufficiency of evidence*

For cases involving the Industrial Insurance Act (IIA), Title 51 RCW, the trial court applies a modified standard of review. *Gorre v. City of Tacoma*, 184 Wn.2d 30, 36, 357 P.3d 625 (2015). RCW 51.52.115 grants a statutory presumption of correctness to the Board's decision. This presumption is overcome by a trial court finding that the preponderance of evidence is against the Board's findings. *Cantu*, 168 Wn. App. at 20. "Only if it finds the evidence to be equally balanced does the presumption require the findings of the board to stand." *Id.* at 20-21 (citing *Allison v. Dep't of Labor & Indus.*, 66 Wn.2d 263, 268, 401 P.2d 982 (1965)).

On appeal from the superior court's decision, this court reviews whether there is substantial evidence to support the superior court. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999). "'Substantial evidence' is evidence that would persuade a fair-minded person of the truth or correctness of the matter." *Erection Co. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 202, 248 P.3d 1085 (2011).

Dr. Donald Williams provided the only medical opinion to support Leon's contention that he could not return to work at McCain Foods. Dr. Williams testified that

9

Leon's posttraumatic stress disorder (PTSD) would cause flashbacks if he was required to return to McCain Foods and those flashbacks, prompted even by the smell of potato frying oil, would prevent him from returning to work there. McCain Foods makes worthy arguments why a trier of fact should not have believed Dr. Williams. Chief among these arguments are (1) medical tests indicated that Leon's answers describing his mental health limitations were unreliable, (2) Dr. Williams met with Leon only once, and (3) three other doctors disagreed with Dr. Williams.[2]

We reject McCain Food's sufficiency challenge for two reasons. First, the trial court did not base its decision solely on the weight of *medical* evidence. Rather, the trial court found that Leon and his witnesses who described Leon's severe limitations were credible. "I agree with Judge Bolong that the expert evidence and particularly the lay evidence, indicates that Mr. Leon's horrifying experience, functional illiteracy, twice [sic] daily morphine intake, PTS[D], major depression and untreatable mental health impairment" prevented him from accepting the forklift operator job offered by McCain Foods. CP at 497; *see Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 523 n.3, 22 P.3d 795 (2001) ("A memorandum opinion may be considered as supplementation of

---

[2] We note that IAJ Bolong set forth numerous reasons why she found Dr. Williams's testimony credible and the three other doctors' testimonies inconsistent and not credible. *See* Appendix.

10

formal findings of fact and conclusions of law."). In addition, the trial court noted that Leon wanted to return to work, as shown by his 25 years of work with only one absence. The trial court credited this fact to Leon and impliedly rejected McCain Foods' argument that Leon exaggerated his mental health disability.

Second, substantial medical and lay evidence supports the trial court's findings in this regard. The testimonies of several witnesses described Leon both before and after his extensive injuries. Leon was once friendly and independent. He is now angry and unable to work with others. Leon's partner of several years testified that Leon experienced great fear the one time she drove them past McCain Foods. Because substantial evidence supports the trial court's contested findings, we reject McCain Foods' sufficiency of the evidence challenge. We confirm the trial court's award to Leon of additional time-loss compensation and pension benefits.[3]

C.    ATTORNEY FEES

Leon requests attorney fees and cites RCW 51.52.130. In the context of the IIA, when a lower court's decision is appealed by a party other than the injured worker and the

---

[3] McCain Foods correctly notes that permanent partial disability for an injury cannot be compensated when a worker receives a total disability pension for the same injury. Appellant's Br. at 5. Because Leon is entitled to pension benefits due to his mental health disability, we need not address McCain Foods' final argument that Leon is entitled to a category 3 permanent partial disability mental health impairment award.

No. 37014-3-III
*Leon v. McCain Foods*

injured worker's right to recover is sustained, the court appealed to is required to grant

attorney fees. RCW 51.52.130. Because we sustain Leon's right to recover additional

time-loss compensation and pension benefits, we additionally award Leon reasonable

attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, A.C.J.

Fearing, J.

12

No. 37014-3-III
*Leon v. McCain Foods*
Appendix

| | | |
|---|---|---|
| IN RE: RUBEN LEON | ) | DOCKET NO. 16 11510 |
| | ) | |
| CLAIM NO. SA-74174 | ) | PROPOSED DECISION AND ORDER |

**Heidi G. Bolong, Industrial Appeals Judge** — Ruben Leon sustained an industrial injury on April 27, 2012, when he was splashed with hot oil while unplugging a valve underneath a fryer, resulting in burns on his left arm, left leg, and the right side of his face, as well as post-traumatic stress disorder, somatic symptom disorder, and major depressive disorder. The Department closed the claim with time-loss benefits paid through April 16, 2015, and permanent partial disability awards of 4 percent of the amputation value of the left arm at or above the deltoid insertion or by disarticulation at the shoulder, a Category 4 permanent skin impairment, and a Category 3 permanent mental health impairment. Mr. Leon asserts that he was temporarily totally disabled from April 17, 2015, through January 25, 2016, and permanently totally disabled as of January 26, 2016. Mr. Leon has shown by a preponderance of credible evidence that he has been unable to perform and maintain generally available work of any kind on a reasonably continuous basis since April 17, 2015. The Department order is reversed and remanded with direction to pay time-loss compensation benefits from April 17, 2015, through January 25, 2016, and to find Mr. Leon permanently totally disabled as of January 26, 2016.

**DISCUSSION**

Ruben Leon is a 49-year-old, right-handed man who was born in Mexico and came to United States alone at age 14. He attended school through the sixth grade, but had no schooling after he came to the United States. He began working for the employer in 1988, working as a potato peeler, receiver, machine operator, and finally in maintenance. Mr. Leon taught himself to speak English. He can read and write in Spanish, but not very much in English. Prior to the injury at issue, Mr. Leon broke his right middle finger at McCain Foods, and still has problems with stiffness in the finger.

On April 27, 2012, Mr. Leon and a coworker, Fermin Aviles, were sent to unplug a valve underneath a fryer. They were told that the fryer was cool enough to work on, but it was not. When Mr. Leon started to work on the cylinder, hot oil gushed out over Mr. Leon's face. Mr. Aviles pulled Mr. Leon out and put him in cold water. Mr. Aviles pulled off Mr. Leon's long-sleeve shirt and saw burns on his left arm, left leg, and the right side of his face. Mr. Leon has a line on his forehead from

Page 1 of 10

where he was wearing a welding cap at the time of the incident. The oil splashed behind his head on his neck and back. Mr. Leon is missing a piece of his left ear as a result of the burns.

Before the industrial injury, Mr. Leon used to fish several times per week, work on cars, and target practice. He does none of those things anymore. His wife, Beth S. Cruz, changed the combination to his gun safe because he was panicked. Mr. Leon is taking morphine and gabapentin, in addition to high blood pressure medications. Although McCain Foods offered work as a Hyster driver, Mr. Leon rejected the offer because he cannot perform such work while on narcotics. Although he would rather be working, he insists he will never go back to McCain Foods.

Ms. Cruz described her husband as a hard worker prior to the industrial injury. They have several rental properties that they bought approximately ten years ago and fixed up prior to the industrial injury. The rentals do not require much work while they are rented, and in between rentals a friend goes with Mr. Leon to help him. He still takes pain medications, including morphine, and takes blood pressure medications even though he did not have high blood pressure prior to the industrial injury. Mr. Leon will not return to the McCain Foods plant, and gets upset when she drives him passed the plant. Because she still has to work, Ms. Cruz moved to another room because his nightmares kept her awake. He thought she did not love him anymore. Where before the incident he was loving and friendly, now she has to watch what she says to him. He is always clearing his throat, scratching his arms, and is always tired. Forceful showers hurt his arms. Before the industrial injury he did not abuse alcohol, but he drinks more now.

Crystal T. Cruz, who was raised by Mr. Leon, described him as very friendly and outgoing before the industrial injury. He loved fishing, working on cars, and hanging out with family. He never missed work and loved being needed. Now Mr. Leon is distant, angry, and closed off from people. He gets frustrated easily, avoids people, does not spend time with the family, and does not take children fishing. Mr. Leon's stepson, Jerald W. Reichel, described Mr. Leon as being antisocial, and drinking more. While Mr. Leon was in the hospital, he had blisters four to five inches in diameter on his head and skin coming off of his arms. Although Mr. Leon was scared, Mr. Reichel said he is tough and never cried despite his pain. Mr. Leon now cannot use a wrench because it hurts his arms, and he asks Mr. Reichel to do things like climb a ladder to change a lightbulb, because Mr. Leon is afraid of reinjuring himself. Mr. Aviles agreed that Mr. Leon does not do the things he used to do, such as fishing and target practicing, and that he is now grumpy and gets tired.

Page 2 of 10

41

LeRoy Enger, HR Business Partner for McCain Foods since July 2014, wrote the job offer for the position of forklift driver, which position would have been available had Mr. Leon accepted it. The job analysis for forklift driver is an accurate representation of the position Mr. Leon was offered. Mr. Enger confirmed that the incident occurred in the employer's north building, while the position offered was in packaging in the southern area. Mr. Enger described the packaging area where French fries are being packaged as dry and noisy. There is no hot oil facility or any kind of cooking or high-temperature equipment in that building. One can access the employer's administrative offices from the packaging building without going through the area where the accident occurred. The company drug policy allows prescription drugs, such as morphine, if taken as prescribed, so that would not be a problem for Mr. Leon to work as a forklift driver. Mr. Enger conceded, however, that the smell of French fries permeates the entire facility.

C. Donald Williams, M.D.

C. Donald Williams, M.D., a board-certified psychiatrist, conducted a psychiatric forensic evaluation of Mr. Leon on July 26, 2016. Dr. Williams noted no prior psychiatric history with Mr. Leon, but found a consistent and steady relationship history and work history which reflected a good work ethic. Dr. Williams administered for psychiatric tests: The PHQ-9, which assesses depression; the GAD-7, which is assesses anxiety; the PCL-5, which measures symptoms associated with post-traumatic stress disorder; and the MMPI-2, which assesses psychological functioning. Dr. Williams concluded that the MMPI-2 was valid and evidenced severe psychological trauma. Dr. Williams diagnosed post-traumatic stress disorder, somatic symptom disorder, and major depressive disorder, all related to the industrial injury. He did not believe Mr. Leon would benefit from treatment, as he has not obtained significant benefit from the sufficient and appropriate mental health treatment he has already had, due to a combination of his cultural and cognitive limitations and the severity of the injury and his PTSD symptoms. Mr. Leon has a particularly severe form of PTSD and his level of sophistication makes it difficult to treat. Dr. Williams determined that Mr. Leon's mental health condition as of January 25, 2016, is best described by Category 4 of WAC 296-20-340.

Michael Friedman, D.O.

Michael Friedman, D.O., a psychiatrist certified by the American Board of Psychiatry and Neurology, performed an independent medical evaluation of Mr. Leon on October 24, 2015. Mr. Leon reported he is always itching, having nightmares three times per week about the accident, waking

frequently at night, and having high blood pressure. He could not give a clear answer as to whether he startles, but noted that he gets upset when his wife comes home from work at McCain Foods.

Dr. Friedman noted that Mr. Leon is in good physical condition, with an affect that is distant, guarded, and suspicious. He acknowledged past suicidal thoughts, without intent. Mr. Leon is a very guarded individual with a profound disability conviction. The cognitive exam revealed no deficit. Dr. Friedman administered the Minnesota Multiphasic Personality Inventory, but Mr. Leon responded in an inconsistent fashion, which negated the validity of the test. Dr. Friedman noted that Mr. Leon is resistant to further treatment. Dr. Friedman determined Mr. Leon was not in need of any further psychiatric treatment for the residuals of the industrial injury as of January 26, 2016, and is fixed and stable as of that date. Dr. Friedman diagnosed post-traumatic stress disorder related to the industrial injury. While Mr. Leon may at times manifest Category 2 behavior with a tremendous sense of stress, and occasionally Category 4 behavior, Dr. Friedman believes the Category 3 mental health impairment rating is accurate as of January 26, 2016.

Douglas P. Robinson, M.D.

Douglas P. Robinson, M.D., a board-certified psychiatrist, performed an independent medical examination of Mr. Leon on April 17, 2014. Mr. Leon reported that his supervisor, Alvin, did not follow proper procedure to assure that the tank held no more hot oil, which would have prevented the incident. Dr. Robinson concluded that Mr. Leon has post-traumatic stress disorder, although he noted evidence of exaggeration of symptoms, and probable panic disorder with agoraphobia and probable major depressive disorder. The PTSD developed as a result of the industrial injury, and the major depressive disorder is likely related to the PTSD. Although Dr. Robinson did not explicitly state the causation of the panic disorder, he did state that it is not uncommon for PTSD to lead to other conditions, including panic disorder. Dr. Robinson noted inconsistencies, including the unvarying nature of his nightmares, the level of avoidance and dysfunction being far greater than expected and worsening over time rather than improving, and Mr. Leon's claim that he is unable to do any job.

Dr. Robinson recommended more treatment given the severity of his symptoms. Based on the records he reviewed, Dr. Robinson believes a Category 3 is an accurate impairment rating as of January 26, 2016. Dr. Robinson conceded, however, that Mr. Leon has limited ability to write, low education, and low psychological insight.

Randel S. Bunch, M.D.

Randel S. Bunch, M.D., a board-certified family medicine practitioner treated Mr. Leon from December 13, 2013, through November 7, 2016. Mr. Leon does not tolerate most medications very well, and it was difficult to find antidepressants, blood pressure medications, or PTSD medications he could tolerate. Dr. Bunch believes Mr. Leon's itching is due to nerve damage from the burns. Mr. Leon is on a low dose of morphine. His blood pressure has been very high since the industrial injury. Dr. Bunch believes Mr. Leon has post-traumatic stress disorder, and is chronically depressed or at least dysthymic. Mr. Leon complained about insomnia, which he believed would interfere with his ability to work. At a visit on February 17, 2015, Mr. Leon was angry that he had been released to the forklift job because his PTSD wakes him up several times per night and he did not think he could stay awake for an eight-hour shift. At a visit on July 10, 2015, Dr. Bunch noted pruritus, post-traumatic stress disorder, depression, and insomnia, all related to the industrial injury, hypertension probably related to the industrial injury, and possible agoraphobia.

Stephen Renz, VRC

Stephen Renz, VRC, confirmed Mr. Leon's limited literacy in reading or writing in English and in Spanish. Following cognitive and IQ testing of Mr. Leon, VRC Renz determined that retraining would be difficult due to a cognitive disorder that was identified, and to Mr. Leon's limited academic ability in English and Spanish. In 2014, VRC Renz understood Mr. Leon to be at maximum medical improvement, and created the job analysis of forklift operator with McCain Foods, which the employer agreed to offer but which Mr. Leon declined on February 25, 2015. VRC Renz did not believe Mr. Leon's use of morphine was an issue because Dr. Bunch indicated the dose was so low that it would not cause any functional impairment.

Temporary and Permanent Total Disability

The phrase "temporary total disability" means a claimant is temporarily incapable of performing generally available work of any kind on a reasonably continuous basis.[1] The test for total disability is the same whether it is temporary or permanent in nature.[2]

Dr. Williams testified credibly that Mr. Leon has not been capable of performing reasonably continuous gainful employment since April 16, 2015. Mr. Leon is specifically not capable of performing the jobs of forklift operator, maintenance person, or belt inspector, because he is so

---

[1] *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501 (1993).
[2] *Bonko v. Department of Labor & Indus.*, 2 Wn. App. 22 (1970).

Page 5 of 10

44

17

preoccupied with continuous flashbacks, distracting thoughts, and dissociative reactions, leaving him out of touch with what is going on around him and unsafe to perform those tasks. The main barriers to Mr. Leon engaging in full-time employment are his inability to maintain attention and concentration for extended periods, his inability to get along with coworkers or peers without behavioral extremes, and his inability to interact appropriately with the general public. Dr. Williams is unaware of any vocational services or retraining that would lead to Mr. Leon being able to return to full-time work.

Dr. Robinson reviewed Mr. Leon's responses to Dr. Williams' MMPI, saw dramatic overwhelming exaggeration and possibly malingering in those responses, found the test to be invalid with major inconsistencies, and found Dr. Williams' conclusions to be inconsistent with the validity rules. Dr. Williams, on the other hand, saw no evidence that Mr. Leon is consciously producing or fabricating symptoms in order to achieve an external goal.

Dr. Robinson determined that Mr. Leon is capable of reasonably continuous gainful full-time employment as a forklift driver for McCain Foods as of April 17, 2015. Although Mr. Leon should be restricted from working at the location where the injury occurred or around similar equipment that presents a risk of burn or thermal injury, Dr. Robinson believes Mr. Leon could perform the job of forklift driver at McCain Foods because it would be nowhere near the tank where the injury occurred. This ignores the evidence that the smell of french fries permeates the entire facility. Dr. Robinson concluded at the time of his examination that Mr. Leon is able to work, that it would be beneficial for him to do so, and that his resistance to return to work was probably greater than any true barriers. Although he initially recommended a gradual return to work, as of April 17, 2015, Dr. Robinson believes a gradual return to work would undermine the process and that it would be better to withdraw support for Mr. Leon's disability behavior. Dr. Robinson's opinions are somewhat undermined by his belief that it would be helpful for Mr. Leon to have an ally at McCain Foods for his return to work, although it would probably not be feasible.

Dr. Friedman's testimony was inconsistent. Based on Mr. Leon's presentation, Dr. Friedman believes he was capable of returning to work as a forklift operator at McCain Foods as of April 16, 2015. Dr. Friedman conceded that the number one concern with the forklift operator position is safety, which requires concentration. Dr. Friedman believes Mr. Leon is capable of such concentration because he is capable of driving, he is in good physical condition, he is able to get his daughter to school on time, and can pay attention while driving and helping his daughter with homework. Dr. Friedman believes this could be stepped up to being able to sustain concentration throughout an

Page 6 of 10

45

eight-hour workday. Dr. Friedman did not explain how being able to concentrate in the relatively low-stress environment of helping one's child with homework or driving her to school translates into the ability to maintain concentration in the high-stress situation of returning to the location of a PTSD-inducing injury, particularly while on morphine and suffering from insomnia. Although Dr. Friedman believes going back to work at McCain Foods may be therapeutic for Mr. Leon as a form of exposure therapy, he also states Mr. Leon's prognosis for returning to employment is very poor due to his belief that he cannot work. In his report, Dr. Friedman concluded that Mr. Leon's disability conviction and behavioral reactivity would more than likely prevent him from gainful employment. In a November 23, 2015 addendum, Dr. Friedman stated that Mr. Leon was capable of gainful employment with the exception of his profound disability conviction, which Dr. Friedman doubted Mr. Leon had prior to the industrial injury. Paradoxically, Dr. Friedman believes there are no psychiatric restrictions regarding returning to gainful employment.

Dr. Bunch, Mr. Leon's treating physician, approved the forklift operator job analysis on October 24, 2014, after confirming that Mr. Leon's use of narcotics would be acceptable in the position. Dr. Bunch believes Mr. Leon could start working half-time and work up to full-time over the course of a month. Dr. Bunch believes Mr. Leon could have worked from April 17, 2015 on, unless there was a psychiatric issue that would disqualify him, which Dr. Bunch doubted. Dr. Bunch concurred with Dr. Friedman's independent medical examination report. Although Dr. Bunch agrees that Mr. Leon could work and that it would probably be best for him, with people who are very convinced they are disabled it is nearly impossible to convince them otherwise.

In industrial insurance cases the opinions of attending physicians should be given special consideration.[3] This legal principle does not require the trier of fact to give more weight or credibility to the attending physician's testimony, but to give it careful thought.[4] Although Dr. Bunch is Mr. Leon's treating physician, he is not a mental health professional. He and Dr. Friedman both testified that Mr. Leon's disability conviction would prevent him from gainful employment. These opinions support Dr. Williams' opinion that Mr. Leon is unable to work.

Mr. Leon has shown by a preponderance of credible evidence that he has been unable to perform and maintain generally available work of any kind on a reasonably continuous basis since April 17, 2015. He was temporarily totally disabled and entitled to time-loss compensation benefits

---

[3] *Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569 (1988).
[4] *Hamilton* at 572.

from April 17, 2015, through January 25, 2016, and is permanently totally disabled and entitled to a pension as of January 26, 2016.

<u>Permanent Partial Disability</u>

A total permanent disability pension is the greatest benefit which can be paid for a single injury, and no partial disability for an injury can be compensated with the award of a total disability pension for that same injury.[5] As Mr. Leon has shown his entitlement to a pension for the April 27, 2012 industrial injury, his entitlement to a greater permanent partial disability award for the same injury is no longer at issue.

## DECISION

In Docket No. 16 11510, the claimant, Ruben Leon, filed an appeal with the Board of Industrial Insurance Appeals on February 17, 2016. The claimant appeals a Department order dated January 26, 2016. In this order, the Department closed the claim with time-loss benefits paid through April 16, 2015, and permanent partial disability awards of 4 percent of the amputation value of the left arm at or above the deltoid insertion or by disarticulation at the shoulder, a Category 4 permanent skin impairment, and a Category 3 permanent mental health impairment. This order is incorrect, and is reversed and remanded.

## FINDINGS OF FACT

1. On April 5, 2016, an industrial appeals judge certified that the parties agreed to include the Jurisdictional History in the Board record solely for jurisdictional purposes.

2. Ruben Leon sustained an industrial injury on April 27, 2012, when he was splashed with hot oil while unplugging a valve underneath a fryer, resulting in burns on his left arm, left leg, and the right side of his face, as well as post-traumatic stress disorder, somatic symptom disorder, and major depressive disorder.

3. Mr. Leon is a 49-year-old man with a sixth grade education, work experience as a potato peeler, receiver, machine operator, and in maintenance, who is illiterate in English.

---

[5] *Harrington v. Department of Labor & Indus.*, 9 Wn.2d 1, 8 (1941); *McIndoe v. Department of Labor & Indus.*, 100 Wn. App. 64, 70 (2000); *In re Jack A. Wallace*, BIIA Dckt. No. 95 5365 (June 14, 1996).

Page 8 of 10

20

4. Mr. Leon is unable to maintain attention and concentration for extended periods, to get along with coworkers or peers without behavioral extremes, and to interact appropriately with the general public, as of April 17, 2015.

5. Mr. Leon was unable to perform or obtain gainful employment on a reasonably continuous basis from April 17, 2015, through January 25, 2016, due to the residuals of the industrial injury and taking into account the claimant's age, education, work history, and preexisting conditions.

6. As of April 17, 2015, Mr. Leon's conditions proximately caused by the industrial injury were fixed and stable.

7. Mr. Leon was unable to perform or obtain gainful employment on a reasonably continuous basis as of January 26, 2016, due to the residuals of the industrial injury and taking into account the claimant's age, education, work history, and preexisting conditions.

**CONCLUSIONS OF LAW**

1. The Board of Industrial Insurance Appeals has jurisdiction over the parties and subject matter in this appeal.

2. Ruben Leon was a temporarily totally disabled worker within the meaning of RCW 51.32.090 from April 17, 2015, through January 25, 2016.

3. Mr. Leon was a permanently totally disabled worker within the meaning of RCW 51.08.160, as of January 26, 2016.

4. The Department order dated January 26, 2016, is incorrect and is reversed. This matter is remanded to the Department to pay time-loss compensation benefits from April 17, 2015, through January 25, 2016, and to find Mr. Leon permanently totally disabled as of January 26, 2016.

Dated: March 7, 2017

*Heidi G Bolong*

**Heidi G. Bolong**
Industrial Appeals Judge
Board of Industrial Insurance Appeals

Page 9 of 10